**Samuel WEISMAN and Juliet Weisman, Plaintiffs,**

**v.**

**M C A INC. and Universal City Studios, Inc., Defendants.**

**Civ. A. No. 3221.**

United States District Court
D. Delaware.

Oct. 4, 1968.

Ernest S. Wilson, Jr., Wilmington, Del., for plaintiffs, Stanley L. Kaufman, Kaufman, Taylor, Kimmel & Miller, New York City, of counsel.

Henry M. Canby and Richard J. Abrams, Richards, Layton & Finger, Wilmington, Del., for defendants; Lawrence M. McKenna, Simpson, Thacher & Bartlett, New York City, of counsel.

## OPINION

CALEB M. WRIGHT, Chief Judge.

Plaintiffs are former owners of 500 shares of Universal Pictures Co., Inc. (Universal). They sue on their own behalf and on behalf of several hundred other Universal stockholders similarly situated. The alleged damages arise out of the purchase and sale of Universal stock, pursuant to a "short form" merger under Delaware law, of Universal into Universal City Studios, Inc. (Studios) on March 25, 1966. Plaintiffs allege that defendants engaged in a course of conduct aimed at depressing the market price of Universal stock and enabling defendants to purchase Universal stock at an unequitable price, all in violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder. Ju-

risdiction is based on § 27 of the Securities Exchange Act, 15 U.S.C.A. § 78aa.

■ Under amended Federal Rule 23 (c) (1), "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Plaintiffs and defendants alike have moved the Court for such a determination, defendants moving in addition for dismissal and plaintiffs for direction of notice to members of the class in accordance with Rule 23(c) (2).[1] For the reasons stated below, the Court will permit the action to proceed as a class action and directs that appropriate notice be given all members of the class. Accordingly, defendants' motions are denied.

### Facts

Plaintiffs' allegations, briefly, are as follows:

On March 25, 1966, pursuant to Delaware General Corporation Law § 253, 8 Del.Code Ann. § 253,[2] Universal was merged into Studios (a wholly owned subsidiary of defendant MCA). A notice of merger was mailed to all minority stockholders advising them that the merger had taken place; that, as a result, all Universal stock had been cancelled; and that they were required to surrender their shares for payment of $75 per share. 329 stockholders, including plaintiff, surrendered their shares, 15 stockholders (Prutzman Group) instituted an appraisal proceeding in the Delaware Chancery Court,[3] and 44 stockholders did neither.[4]

Plaintiffs allege that the $75 price is grossly below the true value of the stock, owing to a course of conduct by defendants aimed at concealing the existence of valuable assets, understating the true earnings of Universal, and depressing the market value of Universal stock. Accordingly, plaintiffs list a series of specific acts in their complaint alleged to have operated as a fraud upon plaintiffs and members of the class and to have resulted in the sale of their shares to Studios for an unfair price. On this basis plaintiffs seek damages under § 10(b) and Rule 10b-5.

Defendants have not yet joined issue but have moved for a determination that this action not be allowed to proceed as a class action. They contend that plaintiffs have failed to define adequately the class they represent and that plaintiffs have fallen wide of the mark in satisfying, as they must, the requirements of amended Rule 23, namely the requirements of fair and adequate protection of class interests, Rule 23(a) (4); of predominance of common ques-

1. The Court does not suggest that this determination under Rule 23(c) (1) need be made only on motion of the parties. On the contrary, the Rule indicates that the Court has an obligation to proceed under 23(c) (1) even in the absence of proper motion. See Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 40–41 (1967).

2. § 253 reads, in pertinent part: "Any corporation organized or existing under the laws of this State, or under the laws of any other state or jurisdiction subject to the laws of the United States, if the laws of such other state or jurisdiction shall permit such merger, owning at least 90 per centum of the outstanding shares of each class of stock of any other corporation * * * may file in the office of the Secretary of State a certificate of such ownership and merger in its name

and under its corporate seal * * *." Studios owned 92% of Universal's stock.

3. The proceeding is still pending.

4. One of those 44, Carl Marks & Co., record owner of 1,000 shares, did institute his own appraisal proceeding and also attempted to intervene in the Prutzman appraisal proceeding. Carl Marks was excluded from the latter by the Delaware Chancery Court and the exclusion was affirmed by the Delaware Supreme Court. The exact status of Carl Marks' individual appraisal proceeding has not been made clear to this Court but indications are that hope has been abandoned for the appraisal route. Affidavit of Edwin S. Marks, Nov. 9, 1967. Accordingly, this Court will treat Carl Marks as one who does not seek appraisal and has not surrendered his stock.

tions over individual questions, Rule 23(b) (3); and of superiority of a class action over other available methods for adjudication of the controversy, Rule 23(b) (3). These contentions will be considered *seriatim.*

## I. *Inadequate Definition of the Class*

By its very nature, a class action cannot be maintained unless there is a "class," adequately defined. 3A Moore (2d Ed. 1967 Supp.) #23.04. The complaint in this action, the Court concedes, does invite considerable confusion as to the exact class represented. Paragraph 10a of the complaint reads:

"Plaintiffs bring this action on their own behalf and on behalf of all members of their class, namely, all former Universal stockholders who, like plaintiffs, sold their shares of Universal to the defendant Studios for $75 per share, pursuant to a merger of Universal into Studios. * * "

Paragraph 30 reads:

"Plaintiffs and members of their class surrendered their shares of Universal for payment of $75 per share, in reliance upon the fact that $75 was a fair price."

On its face, it would seem that plaintiffs represent only those 329 shareholders (including plaintiffs), who surrendered their shares for $75. In their motion brief, however, plaintiffs state clearly that the class consists of 373 members—the 329 who have surrendered plus the 44 who have not surrendered or sought appraisal, i. e., all shareholders except the 15 in the Prutzman Group. Indeed, in arguing adequacy of representation, plaintiffs rely on an affidavit submitted by Edwin S. Marks on behalf of Carl Marks & Co., one of the 44 shareholders who has *not* surrendered its shares,[5] which avers that Carl Marks is a member of the class.

Considering the wording of the complaint in light of plaintiffs' clear intention, it is possible to read the complaint as delineating a class of 373 shareholders. Plaintiffs apparently use the term "sold" in Paragraph 10a, not as synonymous with "surrendered," but in the more technical sense set out, for example, in Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369, 374 (D.Del.1965) and Vine v. Beneficial Finance Co., 374 F.2d 627, 634 (2d Cir. 1967), which held that, in a short form merger, a minority shareholder is a "seller" within the meaning of Rule 10b-5 notwithstanding his failure to surrender the stock. And, plaintiffs' phrase "plaintiffs and members of their class * * *" in Paragraph 30 apparently means "plaintiffs and *some* members of their class * * *." Thus, the complaint can be read to include the 44 shareholders who have neither surrendered their shares nor sought appraisal and the Court will henceforth consider the class as consisting of 373 members (including plaintiffs).

Defendants further object to plaintiffs' indication in Paragraph 30 that the class consists of those shareholders who relied upon the fact that $75 was a fair price. Defendants argue that, if that reliance defines the class, then neither plaintiffs (who admittedly had reservations about the fairness of the price at the time they surrendered their shares, Deposition of Samuel Weisman, p. 34) nor the 44 shareholders who have not yet surrendered their shares can be members of the class. While the question of reliance does have some bearing on plaintiffs' satisfaction of the requirements of Rule 23(b) (3), as discussed below, the Court is satisfied that, insofar as the make-up of the class is concerned, defendants' objection is without merit.

## II. *Requirements of 23(a) (A)—Fair and Adequate Representation*

Under amended Rule 23, all members of the class, other than those who expressly request exclusion from the class, are bound by the judgment of the

---

5. See n. 4, supra.

Court. Rule 23(c) (2). To assure due process to those class members not actually appearing before the Court, Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940), Rule 23(a) (4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."[6] Plaintiff carries the burden of that showing. See Eisen v. Carlisle and Jacquelin, 41 F.R.D. 147, 150 (S.D.N.Y. 1966), reversed on other grounds, 391 F.2d 555 (2d Cir. 1968); Polakoff v. Delaware Steeplechase and Race Association, 254 F.Supp. 574, 579 (D.Del. 1966).

Defendants contend that plaintiffs have failed to carry the burden here, first, because two plaintiffs holding 500 shares do not represent a "substantial portion" of a class of 373 shareholders with 37,371 shares or a "substantial interest in the relief sought" and secondly, because no members of the alleged class have evidenced any interest in the action.[7]

■■ Considering first the defendants numerosity argument, the Court cannot agree that, under the circumstances, two plaintiffs are too few or that their interest in the recovery is too small. Where, as is the case here, the questions common to all members of the class clearly predominate, the plaintiffs' interest in the relief sought is, to them at least, substantial, and plaintiffs are represented, as these plaintiffs are, by able counsel, the Court is persuaded that the rights of the entire class will be adequately protected. In this regard, the Court is inclined to agree with the Second Circuit that numbers alone have little relevance. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968) (permitting one plaintiff to represent all purchasers and sellers of "odd lots" on the New York Stock Exchange— a class with an estimated 3,750,000 members).

■ Defendants' argument that no members of the class have expressed an interest in the continuation of the action is, if not wholly irrelevant, at least premature. To begin with, one class member, Carl Marks, former owner of 1,000 shares of Universal, has clearly sounded to the Court its desire that this case proceed as a class action. But Carl Marks aside, the Court is not persuaded that a class suit should be dismissed out of hand because absent class members have not voiced their approval. Indeed, since the amended Rule 23(c) (2) grants absent members the effect of the judgment unless they exclude themselves, the Court's concern should be more with those affirmative expressions of disapproval than with the silence of the represented. Again, Eisen v. Carlisle & Jacquelin, supra, is on point:

"We are not persuaded that it is essential that any other members of the class seek to intervene. Absent class members will be able to share

6. As is often noted, the requirement of adequate representation under the new rule is much more significant than it was under old Rule 23 where, in class actions of the sort presented here ("spurious" class actions), the binding effect of the judgment ordinarily did not extend beyond the parties actually present before the Court. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (1963); 3 Loss, Securities Regulation (1962 Ed.) 1820–22.

7. Defendants also raise the question of whether plaintiff Samuel Weisman, an attorney himself, has made arrangements with his counsel to share in the legal fees in this case, the import of the question apparently being that any such arrangement would give Mr. Weisman a greater proportion of the recovery than other members of the class and thus make Mr. Weisman more prone to settlement and generally less aware of interests other than his own. Whatever the merit to that line of inquiry, Mr. Weisman has sworn by affidavit that no such arrangements have been made by either he or Mrs. Weisman (the other plaintiff) and the Court for the present is content to let the matter rest there.

in the recovery resulting in the event of a favorable judgment, and, if they wish to avoid the binding effect of an adverse judgment, they may * * * attack the adequacy of representation in the initial action or disassociate themselves from the case. * * * Necessarily, a different situation is presented where absent class members inform the court of their displeasure with plaintiff's representation * * but the representative party cannot be said to have an affirmative duty to demonstrate that the whole or a majority of the class considers his representation adequate. Nor can silence be taken as a sign of disapproval." 391 F.2d 555, 563.

Even were silence relevant, it is too early in the case to give it determinative significance. For, as *Eisen* indicates:

"Individual claimants who may initially be reluctant to commence legal proceedings may later join in a class suit, once they are assured that a forum has been provided for the litigation of their claims." 391 F.2d 555, 563.

Also, until the case is permitted to proceed as a class action, notice as provided in Rule 23(c) (2) cannot issue to members of the class; hence, many absent members may, at this stage, be unaware of the existence of the suit.

■ In light of the circumstances shown to the Court, it is persuaded that the interests of the class will be fairly and adequately protected. It may be that new factors will come to the Court's attention in due course; if so, this Court has the power to consider them and to amend its conclusion accordingly. Rule 23(c) (1); Advisory Committee's Note, Proposed Rule of Civil Procedure 23, 39 F.R.D. 95, 104 (1966).

### III. *Requirements of Rule 23(b) (3)*

■ Neither party disputes that this action falls within the terms of Rule 23 (b) (3). Accordingly, the Court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A. *Predominance of Common Questions*

There are several questions of law and fact common to all members of the class, not the least of which are whether the alleged acts of defendants violated the Securities Exchange Act, whether the alleged acts of defendants did in fact defraud Universal minority stockholders, and the extent of their damages. While there may be a number of questions peculiar to individual class members, it is not apparent to the Court at this point that the individual questions predominate over the common questions.

Defendants argue vigorously that, because there is a substantial issue of reliance in this case, Rule 23(b) (3)'s predominance requirement cannot be satisfied. Specifically, defendants contend that, unless each member of the class can demonstrate his reliance on those acts of defendants alleged to have been fraudulent, he cannot recover. Accordingly, the argument goes, there are 373 separate questions of reliance before the Court and hence *individual* questions predominate. Defendants' point no doubt springs from the admonition of the Rule 23 Advisory Committee that:

"* * * Although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation * * * in the kinds or degrees of reliance by the persons to whom they were addressed." 39 F.R.D. at 103.

Here, the Court is convinced that there is no material variation in the kinds of reliance. In a forced sale situation such as this short-form merger where the alleged fraudulent acts were executed by the corporations for the alleged purpose of and with the alleged result

of facilitating the purchase of minority stock at a depressed price, it hardly makes sense to speak in terms of reliance on this or that *act*. Instead, the only reliance that seems relevant is the more general reliance by the minority stockholders which the law implies at the time the stockholders purchase their shares, namely, reliance on the good faith and fair dealing of the defendants. And, in this, there can hardly be variation among the members of the class.

There is ample authority for this position. Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369 (D.Del. 1965), for example, involved the same basic facts as the case at bar.[8] There, the Court noted:

"*  *  * defendants say that plaintiff's action must be dismissed because there is no allegation that she relied on the manipulative or deceptive devices alleged *  *  *. It may be fairly inferred, however, that when plaintiff purchased her shares she did rely upon the honesty and fair dealing of New Company and those who controlled it. Every contract contains the implied condition that the parties to it will act in good faith and deal fairly with each other in its performance *  *  *. Plaintiff necessarily relied upon this all-important condition when, by acquiring her shares, she agreed with Old Company and its stockholders that Old Company could be merged upon terms later to be determined.  *  *  *

"It may be conceded that Rule 10b–5 is inapplicable unless a seller has been deceived.  *  *  * Plaintiff at bar was the subject of deception for when she acquired her stock she did so upon the justifiable assumption that any merger would deal with her fairly, only later to find, according to the

Complaint, that the terms of the merger were designed to defraud her." 241 F.Supp. at 375.

Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), directs the same result. Like *Voege* and the instant case, *Vine* involved a short-form merger attacked as fraudulent. The Court held:

"The need for such reliance [on defendants' fraudulent representations] by a plaintiff has been the subject of much recent scholarly analysis. *  *  * Whatever need there may be to show reliance in other situations, *  *  * we regard it as unnecessary in the limited instance when no volitional act is required and the result of a forced sale is exactly that intended by the wrongdoer." 374 F.2d at 635.

Defendants mention several other possible individual questions. The Court, however, is disposed to find that plaintiffs have carried the burden of proving predominance.

### B. *Superiority of Class Action*

██  In view of the predominance of common questions in this suit and the substantial number of class members, some of whom no doubt have interests too small to justify independent suits, the class action device seems particularly well-suited to this piece of litigation. Defendants suggest that it would be more advantageous to order plaintiffs here to proceed on their own but allow other interested parties to join in the suit under the liberal provisions of Rules 20 and 24. Prejudice to small claims aside, such a route, in the Court's opinion, would be more likely to lead to an unmanageable, unwieldy lawsuit than a class action and hence is less preferable.

---

**8.** Defendants attempt to distinguish this case on the ground that the plaintiff in Voege sought appraisal first before bringing the 10b–5 action, arguing that, had plaintiff not done so, she would have not acted in good faith vis-a-vis defendants and would have been denied relief. Voege, § 10b, and Rule 10b–5 do not support that assertion.

*Conclusion and Orders*

Plaintiffs have amply demonstrated to the Court satisfaction of the requirements of amended Rule 23. The Court, accordingly, grants their motions for an order directing this action to proceed as a class action and for an order directing notice to members of their class. The Court reiterates, however, that its decision in this regard is not irreversible; should any new matter arise which suggest the need to reconsider this decision, the Court will not hesitate to utilize its powers under Rule 23(c) (1).

The Court directs plaintiffs to prepare a form of notice which will fulfill the requirements of Rule 23(c) (2) and to submit such form to the Court for its approval. The plaintiffs are also directed to furnish the Court the names and addresses of all members of plaintiffs' class.

It is so ordered.