Robert J. IHRKE and Mary E. Ihrke,
Appellants,

v.

NORTHERN STATES POWER COM-
PANY, a Minnesota Corporation,
Appellee.

No. 71–1504.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1972.

Decided May 3, 1972.

Rehearing and Rehearing En Banc Denied
May 25, 1972.

Roger S. Haydock and Michael A. Wolff, St. Paul, Minn., for appellants.

Mackall, Crounse & Moore, Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, and LAY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Robert J. Ihrke and Mary E. Ihrke (the Ihrkes) appeal from the district court's orders granting the motion to dismiss filed by Northern States Power Company (Northern), and denying the Ihrkes' motion to maintain this suit as a class action. At the time of bringing this action, on April 21, 1970, the Ihrkes were gas and electricity customers of Northern in the City of St. Paul, Minnesota. They were delinquent in their payments, and Northern was threatening to terminate the services. The Ihrkes claimed that termination without notice and hearing constituted a taking of their property without due process of law. Jurisdiction was alleged under 28 U.S.C. §§ 1343(3) and (4), 2201 and 2202, and 42 U.S.C. § 1983.

On August 11, 1970, an order was entered denying the Ihrkes' motion to maintain this suit as a class action. The district court's Memorandum Opinion granting Northern's motion to dismiss was filed July 8, 1971. Ihrke v. Northern States Power Co., 328 F.Supp. 404 (D.Minn.1971). In that opinion, the district court found that Northern's threat to terminate the Ihrkes' utility services without a prior hearing did not fall within the purview of the Civil Rights Act, 42 U.S.C. § 1983, since Northern had not acted under color of state law, and for the additional reason that a "property right" cannot be asserted in a § 1983 civil rights action. While this case was pending in the district court, the Ihrkes moved from a residence where they directly subscribed to Northern's utility services to another where they received

said services through their landlord's subscription.

Upon this appeal, the Ihrkes assert that (1) Northern's threat to terminate the Ihrkes' utility services without notice and a hearing constituted a deprivation (a) under color of law (b) recognizable under § 1983 (c) of a constitutionally protected right; (2) a justiciable controversy still remains even though they are no longer subscribers to Northern's utility services; and (3) the class action should have been permitted since the subscribers to Northern's utility services and the welfare recipients therein were a proper class and subclass respectively. For the reasons hereinafter stated, we reverse and remand for further proceedings consistent with the views expressed herein.

### I.

■ The trial court determined as one of its two grounds for dismissal that "while property rights and rights of personal liberty are entitled to the procedural protections provided by due process, only the latter can be asserted in federal courts in § 1983 civil rights actions." *Id.* at 407. This question has now been decided by the Supreme Court in the case of Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), in which the following statement is made for the Court by Justice Stewart:

> "Neither the words of § 1343(3) nor the legislative history of that provision distinguish between personal and property rights. In fact, the Congress that enacted the predecessor of §§ 1983 and 1343(3) seems clearly to have intended to provide a federal judicial forum for the redress of wrongful deprivations of property by persons acting under color of state law." *Id.* 92 S.Ct. at 1117.

Accordingly, the decision of the trial court cannot be sustained on this basis.

### II.

The second ground upon which the trial court determined that the motion to dismiss should be sustained was that Northern did not engage in the conduct complained of under color of state law. In making that determination, the district court relied upon Kadlec v. Illinois Bell Telephone Co., 407 F.2d 624, 626 (7th Cir.), cert. denied, 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed.2d 95 (1969) where the court said:

> "Motivated by purely private economic interests and pursuant to its *own regulations*, Illinois Bell terminated plaintiffs' Call-Pak service. The only apparent state connection with the termination rests in the fact that defendant company filed its regulations with state authorities; the state in no sense benefited from, encouraged, requested or cooperated in this suspension of service."

However, this case does not present the same situation. While Northern prepared its own regulations, the City Council of St. Paul had the right to review, and revise or reject them. Also, since the city received 5% of Northern's gross earnings, the city benefited from the payment of bills resulting from Northern's threatening to terminate services. We believe that this case presents the situation anticipated by *Kadlec's* concurring opinion, *supra*, 407 F.2d at 628 where it is said:

> "[I]t may be possible to demonstrate that a privately-owned publicly-regulated utility or carrier or similar entity has a sufficient nexus with or dependence on a state as to make some of its actions under color of law. Some of the factors which should be considered are whether 1) the entity is subject to close regulation by a statutorily-created body (such as the Illinois Commerce Commission), 2) the regulations filed with the regulatory body are required to be filed as a condition of the entity's operation, 3) the regulations must be approved by the regulatory body to be effective, 4) the entity is given a total or partial monopoly by the regulatory body, 5) the regulatory body controls the rates charged and/or specific services offer-

ed by the entity, 6) the actions of the entity are subject to review by the regulatory body, and 7) the regulation permits the entity to perform acts which it may not otherwise perform without violating state law. There may be other factors to be considered besides those here enumerated. The enumeration here of particular factors means that less than all may be sufficient to show color of law in some cases and that nothing less than all may be required in other cases. Each case will depend on its facts."

In viewing the Ihrkes' allegations, we find that they adequately alleged "color of law" in asserting, among other things, that (1) Northern was given exclusive franchises to furnish utility services; (2) Northern was granted permission to use public property for performing the necessary functions to provide such services; (3) the City Council had the right to review Northern's operations; (4) Northern could not perform certain functions without the City Council's prior approval; (5) Northern had to file with the city copies of its schedules, contracts, agreements, rules and regulations; (6) the City Council had the right to review and reject Northern's rate changes, schedules, contracts, agreements, rules and regulations; and (7) Northern had to submit to the city certain financial statements and a fee based upon 5% of gross earnings. These allegations, which are supported by St. Paul, Minn.,

Code § 444 and Ordinances 11761 and 11762, were not contradicted by Northern's affidavit in support of the motion to dismiss. That affidavit basically asserted that Northern was a "privately owned and managed utility" organized under Minnesota corporate law which received "no direct subsidies or other funds," "no tax exemptions," and no assistance in the "rendering or collection of bills" or in the "discontinuing service" from the "State of Minnesota nor any of its political subdivisions."

Federal courts have generally recognized private conduct as "color of law" or "state action" when it performs a "public" function and is subjected to "public" regulation. In Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966) [a private park whose management was entwined with municipal control], the Supreme Court said:

"Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action. . . . That is to say, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."[1]

---

1. *See also* Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) [private restaurant leasing city property]; Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) [private association preventing individuals from voting in association elections]; Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) [private "company" town refusing distribution of religious literature]; Smith v. Hampton Training School for Nurses, 360 F.2d 577 (4th Cir. 1966) [private hospital receiving public funds]; Boman v. Birmingham Transit Co., 280 F.2d 531 (5th Cir. 1960) [private utility under special franchise using public property to perform public function with authorization to adopt rules enforceable by criminal

sanctions]; City of Greensboro v. Simkins, 246 F.2d 425 (4th Cir. 1957) [private golf course leasing facilities constructed with public funds on public land]; Derrington v. Plummer, 240 F.2d 922 (5th Cir. 1956), cert. denied sub nom. Casey v. Plummer, 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719 (1957) [private cafeteria leasing location in courthouse and performing cafeteria services for courthouse utilizers]; Flemming v. South Carolina Electric and Gas Co., 224 F.2d 752 (4th Cir. 1955), appeal dismissed, 351 U.S. 901, 76 S.Ct. 692, 100 L.Ed. 1439 (1956) [private bus company enforcing state segregation law]. *Contra,* Place v. Shepherd, 446 F.2d 1239 (6th Cir. 1971) [private hospital receiving state and federal funds]; Blackburn v. Fisk Univer-

In the recent case of Lavoie v. Bigwood, 457 F.2d 7 (1st Cir. 1972), the First Circuit determined that the eviction of a tenant from a mobile home park was "state action" under 42 U.S.C. § 1983 where the mobile home park was in fact a monopoly created by municipal zoning. In that case, the town of Merrimack, New Hampshire enacted a zoning ordinance pursuant to a delegation of that power by the state statutes of New Hampshire. This zoning ordinance provided that no mobile home could be located other than in a mobile home park, and further provided that no mobile home park could be established without a permit from the Board of Selectmen of the town. Such permits could not be issued under the ordinance until the Town Planning Board determined and certified to the Board of Selectmen that the proposed mobile home park would not be injurious or detrimental to the neighborhood in which it was to be located. The First Circuit Court determined that this had the practical effect of creating a monopoly and that "an ejectment action instituted to punish the exercise of a tenant's rights of speech and association by a mobile home park owner whose monopoly had been created by zoning is an 'invalid application' of the New Hampshire landlord and tenant statute." *Id.* at 14.

In this case, the State of Minnesota, by statute, prohibits the operation of a public service corporation in any Minnesota city unless it obtains a franchise from that city. Minn.Stat.Ann. § 300.03. Northern was granted gas and electricity franchises by the City of St. Paul as authorized by Minn.Stat.Ann. § 451.07.[2] These franchises established the rates to be charged to Northern's customers and provided further that Northern pay the city 5% of all sums received by Northern from the sale of gas and electricity distributed and used within the City of St. Paul. The Ihrkes allege in their complaint that "exclusive franchises" were given to Northern, but the franchises themselves indicate they are nonexclusive. However, Northern does not contend that any other public service corporation has been granted a gas or electricity franchise in the City of St. Paul. The city reserved to itself the right to review, reject or revise regulations promulgated by Northern, including, we assume, regulations relating to termination of service for nonpayment of bills. All of this was done by the City of St. Paul pursuant to legislative authorization of the State of Minnesota.

■ It is thus apparent that 5% of every dollar collected by Northern for gas and electricity sold in St. Paul is paid to the city. While the city does not participate in Northern's collection procedures, it does reserve the right to approve or even revise Northern's regulations relating thereto, and it is obviously the direct beneficiary of them. By its own actions, the City of St. Paul has in effect given Northern a monopoly on the retail distribution of gas and electricity, and as a practical matter, the Ihrkes could not buy these commodities from any other source. Under these circumstances, we think it is abundantly clear that the action of Northern in threatening to terminate the service to the Ihrkes was under "color of law" as used in 42 U.S.C. § 1983, and the trial court's determination to the contrary was erroneous.

sity, 443 F.2d 121 (6th Cir. 1971) [private university receiving funds from state, having exemption from state and local taxes, and possessing the power of eminent domain]; Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969) [private university receiving special tax exemption]; Kadlec v. Illinois Bell Telephone Co., *supra* [private telephone company filing regulations with the state]; Powe v. Miles, 407 F.2d 73 (2nd Cir. 1968) [private college performing a public function, receiving public funds and having state regulation].

2. Municipal ordinances adopted by state authority constitute "state action" and are within the prohibition of the Fourteenth Amendment. Carlson v. California, 310 U.S. 106, 109, 60 S.Ct. 746, 84 L. Ed. 1104 (1940).

### III.

Northern claims that, since the Ihrkes have ceased to be direct subscribers of Northern, this appeal should be dismissed for mootness. The Ihrkes admit they are no longer direct subscribers of Northern but allege that they live in a dwelling where the landlord pays the utility bills to Northern (which are included in their rent payments) and claim they are still subject to possible damage in the event the utilities are discontinued without notice or hearing. The Ihrkes also claim that they may move into a dwelling where they will pay their own utilities so there is a possibility that a direct controversy may recur between the parties. They further allege that this is a question of public interest which should properly be decided even though mootness is found. An additional reason cited by the Ihrkes is that a class action should have been permitted here, in which case, the fact that the issues are moot as to the Ihrkes should not adversely affect the right of the other members of the class to obtain declaratory and injunctive relief.

It is true that in Chicago Great Western Ry. Co. v. Beecher, 150 F.2d 394, 398 (8th Cir. 1945), cert. denied, 326 U.S. 781, 66 S.Ct. 339, 90 L.Ed. 473 (1946) we said:

"[A]n appellate court, when an event has occurred which renders it impossible to grant any effectual relief to the appellant, will not proceed to judgment but will dismiss the appeal."

However, federal courts have recognized an exception to the mootness doctrine where recurring questions of public interest are involved. In Women Strike for Peace v. Hickel, 137 U.S.App. D.C. 29, 420 F.2d 597, 604 (1969) (2–1), one federal court said:

"When controversies present what are essentially recurring issues of public interest they are not mooted because the most recent particular occasion for consideration of the issue has come and gone."

*See also* United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Allen v. Hickel, 138 U.S.App.D.C. 31, 424 F.2d 944, 950 (1970); Friend v. United States, 128 U.S.App.D.C. 323, 388 F.2d 579, 581 (1967), and cases cited therein at n.1.

In Boggess v. Berry Corporation, 233 F.2d 389, 391, 16 Alaska 256 (9th Cir. 1956) the Ninth Circuit held:

"Where, however, interest of a public character are involved under conditions that may immediately be repeated, thus giving the litigation a continuing character . . ., the mere fact that the particular subject matter of the instant cause has expired does not render the case moot."

In Dyer v. Securities and Exchange Commission, 266 F.2d 33, 47 (8th Cir.), cert. denied, 361 U.S. 835, 80 S.Ct. 86, 4 L.Ed.2d 75 (1959), this Court recognized the "public interest" exception to the mootness doctrine. In that case, this Court said:

"In still wider horizon, there also is a recognized right of judicial discretion, in the public interest, to deal with the validity or propriety of administrative regulations and actions, where they have justiciably been brought into court, even though they may perhaps have ceased thereafter to have a direct significance in the particular situation. This does not mean that a court is required or has the right to engage in a decision of this character in every such situation; but it is judicially entitled to do so where it appears that some general benefit may public-wise, or in relation to the possibility of further similar litigation, come from having it established whether the administrative agency has acted within or without its authority."

Recently, the Supreme Court in Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), decided a case involving residency requirements for voting in the State of Tennessee. In that

case, Justice Marshall observed as follows:

"The District Court properly rejected the State's position that the alleged invalidity of the three-month requirement had been rendered moot, and the State does not pursue any mootness argument here. Although appellee now can vote, the problem to voters posed by the Tennessee residency requirements is 'capable of repetition, yet evading review.' Moore v. Ogilvie, 394 U.S. 814, 816 [89 S.Ct. 1493, 1494, 23 L.Ed.2d 1] (1969); Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515 [31 S.Ct. 279, 283, 55 L.Ed. 310] (1911)." *Id.* at 333 n. 2, 92 S.Ct. at 998.

■ We therefore hold that the trial court should consider and determine the issues raised on their merits even though the immediate controversy between the parties is, at least for the time being, moot.

### IV.

■ The trial court determined, without stating its reasons, that this action should not be maintained as a class action. With this conclusion we agree.

The prayer of the complaint (and of the amended complaint) is primarily for a declaratory judgment holding that the rules and regulations of Northern are unconstitutional in that they permit Northern to terminate the utility services of its customers without adequate prior notice and without a fair and impartial hearing. No damages are requested on behalf of the Ihrkes or on behalf of the class. The determination of the constitutional question can be made by the Court and the rules and regulations determined to be constitutional or unconstitutional regardless of whether this action is treated as an individual action or as a class action. No useful purpose would be served by permitting this case to proceed as a class action.

An additional reason that a class action should not be permitted in this case

is that it does not appear that the claims or defenses of the representative parties are typical of the claims or defenses of the class (or subclass) as required by Rule 23, Federal Rules of Civil Procedure.

There is some confusion in the briefs as to the description of the class and subclass which the Ihrkes claim to represent. However, we are bound to consider only the pleadings contained in the original record on appeal, and in that record the only description of the class and subclass is contained in the original complaint as follows:

"5. The plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. The plaintiffs are representatives of one class of persons and of an included subclass.

"6. The plaintiffs are members of a class composed of all persons who reside in the City of Saint Paul and who have made application to the defendant, Northern States Power, for utility service.

"7. The plaintiffs are members of a subclass of the above defined class composed of those persons in that class who because of their poverty are unable to pay for utility services."

The class is alleged to include all those persons who reside in St. Paul who have made application to Northern for utility service. It is possible that all such persons who are actual subscribers would share the desire of the Ihrkes for a change in the rules and regulations which would require adequate notice prior to termination of their utility service. But it is highly unlikely that the claim of the Ihrkes that a hearing should be required after notice and prior to termination, is typical of the claims of the class. It is likely that some customers of Northern would feel that the additional expense of such a procedure, if it is indeed required, could conceivably result in a rate increase to all customers, and this certainly would not be considered de-

sirable by all of the subscribers of Northern.

The same analysis is applicable to the subclass, although it is conceded there would be a larger percentage of the subclass which would share the view that a pretermination hearing should be held. It should also be noted that the membership of the subclass (persons who because of their poverty are unable to pay for utility services), would be impossible to determine because of the vagueness of its description.[3]

Reversed and remanded for further proceedings consistent with the views expressed in this opinion.

LAY, Circuit Judge (concurring).

I concur in Judge Ross' opinion with the exception of that portion dealing with the question whether this can be maintained as a class action. It seems to me that the claim brought here by the plaintiffs is one that affects all subscribers to utility services and one in which all subscribers to utility services have a direct interest, to-wit, adequate notice prior to termination of the utility service. I deem this is sufficient interest under Federal Civil Procedure Rule 23 to allow plaintiff to sue as a representative of the class.

MATTHES, Chief Judge (concurring in part, dissenting in part).

I agree with the majority that the trial court erred when, in the course of dismissing the Ihrkes' cause of action, it ruled that property rights were not assertable in actions brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). *See* Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

I agree further that this suit cannot properly be maintained as a class action. For the reason stated by Judge Ross, I concur in the conclusion that "it is highly unlikely that the claim of the Ihrkes that a hearing should be required after notice and prior to termination, is typical of the claims of the class."

But having determined that the Ihrkes are the only proper plaintiffs in this case, and in view of the fact that the Ihrkes no longer are direct subscribers of Northern, it seems clear to me that the issue presented has become moot, and for this reason I feel constrained to dissent from the holding of my brethren that the district court is empowered to adjudicate the merits of the issue.

Constitutional questions sought to be adjudicated in federal courts "must be presented in the context of a specific live grievance." Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L. Ed.2d 113 (1969). *See also*, United Public Workers of America v. Mitchell, 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754; Liverpool, New York & P. S. S. Co. v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885). The Ihrkes have no "live grievance" with Northern. On this record the controversy is terminated and the action should be dismissed.[1]

---

3. "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable. Weisman v. M C A Inc., D.Del., 1968, 45 F.R.D. 258; Hardy v. United States Steel Corporation, N.D.Ala., 1967, 289 F.Supp. 200; 3A Moore's Federal Practice (2nd Ed., 1969) ¶ 23.04. See Rule 23(a), Fed.R.Civ.Procedure. Cf. Gillibeau v. City of Richmond, 9 Cir., 1969, 417 F.2d 426." DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970).

1. The majority attempts to remove this case from the mootness doctrine because, although the immediate interest of the Ihrkes has disappeared, the case presents "a recurring question of public interest." Although the exception might be properly applicable in another case, it remains my conviction that when circumstances obviate or significantly diminish the interest of the complainant in the outcome of the law suit, the case loses its adversary character and ceases to be justiciable.

Mootness may not be the result where the change in circumstances is brought

Because the cause should be dismissed as moot, I would not find it necessary or appropriate to reach the question of state action.

about by the defendant, because defendants cannot thus be allowed to avoid the legally binding effect of a court adjudication. United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Nor need a cause be mooted by the change in circumstances of one plaintiff where the complaint alleges the grievance of a proper class, because the class may remain to prosecute the claim. But neither of these cases is before us today.