Lawrence V. COTTRELL, Jr., et al.

v.

**VIRGINIA ELECTRIC & POWER COMPANY et al.**

Civ. A. No. 67–73–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 1, 1974.

See also D. C., 363 F.Supp. 692.

Neighborhood Legal Aid Society, Inc., Richmond, Va., for plaintiffs.

James E. Farnham, Richmond, Va., for VEPCO.

Richard D. Rogers, Jr., Richmond, Va., for SCC.

MEMORANDUM

MERHIGE, District Judge.

Lawrence and Elaine Cottrell brought this action individually and on behalf of all others similarly situated challenging the procedures by which the defendant, Virginia Electric & Power Company (VEPCO) terminates service to delinquency accounts. Jurisdiction is attained pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343, 2201 and 2202.

At trial on February 19, 1974, defendants moved for a directed verdict on the grounds that plantiffs had not carried their burden of establishing that the case should proceed as a class action and that, since the named plaintiffs' individual claim had been resolved, the action should be dismissed as moot. At the conclusion of the evidence, the Court requested that the parties submit memoranda dealing with the question of whether the case could proceed as a class action. Those memoranda have been filed, and on the material before it the Court deems the matter ripe for disposition.

The underlying facts are not in dispute. VEPCO is a public service company invested by the State of Virginia with various powers, duties and responsibilities in connection with provision of electric power service to Virginia residents. VEPCO is a monopoly and pursuant to Virginia law is supervised by the defendant State Corporation Commission (SCC). On November 27, 1972, the Cottrells moved to 5305 Downing Road, Apt. A, Richmond, Virginia, and on that day established service with VEPCO. A five dollar connection charge and a fifteen dollar deposit were paid. The Cottrells were not billed for this service at the time the suit was filed, on February 12, 1973, but within three weeks of commencement of service at the Downing Road address, the Cottrells received a delinquency notice in the amount of $93.16 and were notified that service would be terminated if pay-

ment was not made by January 29, 1973. This was followed by another notice dated February 2, 1973, relating that the amount past due was now $98.16, and threatening termination without further notice if that amount was not paid by February 9, 1973. Plaintiffs contacted VEPCO and were informed that charges outstanding were due for services rendered them in 1972 at 101 East Williamsburg Road, Richmond. Though plaintiffs averred that they never lived at that address nor authorized anyone to contract for utility service in their names, VEPCO persisted in threatening to terminate service at 5305 Downing Road.

Upon filing this action, plaintiffs sought a temporary restraining order. The motion for same was withdrawn when VEPCO offered to hold termination in abeyance. On February 13, 1973, VEPCO determined that the Cottrells were correct after all, that a fraud had been perpetrated upon them by third parties, and has since dropped their claim against plaintiffs. As a result of the Cottrell suit, the S.C.C. has begun an "informal investigation into the internal practices and procedures" employed by VEPCO.

Plaintiffs' substantive claim is that the termination practices of VEPCO which result in termination of electrical service "without adequate notice and a prior evidentiary hearing" is a denial of procedural due process required by the Fourteenth Amendment. They seek to represent "all residential consumers of electrical service furnished by VEPCO whose service has been terminated within the two years immediately preceeding the commencement of this suit, and all those residential customers who become threatened with termination during the pendency of this suit, without adequate notice and without first being afforded an opportunity to participate in a full and impartial evidentiary hearing prior to termination."

Rule 23 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Satisfaction of these requirements, of course, must be determined in light of the scope and nature of the specific claim with regard to which class status is sought. Thus similarities or differences between a purported representative and members of his proposed class are relevant only to the extent that they bear on the legal issue raised. As the Court understands the legal issue in this case, it is whether VEPCO may, under any circumstances, effect an involuntary termination of electrical services with only such prior notice and hearing as is now available.

Each necessary element of class status is separately and vigorously challenged by defendants. Each is advanced with equal vigor by plaintiffs.

*Numerosity*

█ Underlying defendants' argument that plaintiffs have not demonstrated the existence of a class so numerous that joinder is impractical is the premise that the proper class in this action, were it to exist, would be composed of those persons (1) who would take advantage of a pre-termination hearing were one granted, and (2) whose disagreement with VEPCO regarding cut-off grew out of a situation factually similar to that of the Cottrells. Thus despite evidence before the Court that approximately 40,000 customers have their electrical service terminated each year for non-payment of charges (Exhibit IX attached to defendant VEPCO's answers to plaintiffs' interrogatories), presumably without prior hearing, defendants assert that plaintiffs have failed to indicate the existence of a class who desire a hearing and whose claims on the merits at that hearing would be similar to plaintiffs'. However, plaintiffs' class claim goes to neither the substantive merits of their particular dispute with VEPCO nor individual desire to exercise the right which they allege exists. Plaintiffs' constitutional claim is that irrespective of the circumstances which lead to the brink of termination, service may not in fact be discontinued without the provision of the *opportunity* for a customer, if he so chooses, to present his case against termination in a due process hearing. The right, if it exists, exists, like the right to a hearing before termination of welfare benefits, irrespective of a party's disposition to exercise it. *Cf.* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Plaintiffs' due process argument requires not that a hearing be given but that the opportunity for a hearing be available. Forty thousand people a year are allegedly terminated without such an opportunity. Since desire to ex-ercise does not affect the right, it similarly does not limit the class. This class has been denied what plaintiffs allege due process requires.[1] Numerosity is satisfied. A similar argument applies with regard to the subclass of those threatened with termination during pendency of this suit. (See Exhibit IX of VEPCO's answers to plaintiffs' interrogatories for numbers of cut-off notices generated in the first half of 1973).

*Commonality*

█ Rule 23(a)(2) requires that there be issues of fact *or* law common to all class members if litigation is to be given class treatment.

The common issue of law in this case is whether due process requires a hearing prior to termination of electrical service. Defendants urge the Court to adopt the position that since the facts leading to termination are different in nearly every case, there is no factual issue common to all members of the class. Assuming such discrepancies, however, the commonality requirement is met since there is the common issue of law grounded in the common fact of pre-hearing termination and the requirement of (a)(2) is in the disjunctive. Disparate facts which merely set the stage for alleged common deprivations of rights have not been allowed to defeat 23(a)(2)'s requirement. See Like v. Carter, 448 F.2d 798 (8th Cir. 1971); Kohn v. Royall, Koegel and Wells, 59 F.R.D. 515 (S.D.N.Y.1973); State of Iowa v. Union Asphalt, 281 F.Supp. 391 (S.D.Iowa 1968). See also, Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970).

The individual facts leading to each termination or threat of termination are not relevant to this case. The factual thread that binds together all of the individual disputes and different factual

---

1. A concrete dispute exists with regard to all persons who reached the point where the decision whether or not to exercise their alleged right would normally arise and no mechanism was available to implement a potential affirmative choice.

situations is that in none of them was a due process hearing offered prior to termination or the threat of termination. Plaintiffs are asking this Court to require the opportunity for a hearing prior to termination to all class members at which, should they find the hearing necessary, they undoubtedly will discuss the facts relating to their individual dis-pute with the power company, but only at that time will such facts be relevant.

*Typicality*

■ The power company contends that "(T)he Cottrells cannot satisfy the typicality prerequisite because the facts out of which their complaint arose are peculiar and unlike that of the class members . . ." Again defendants focus on the act of fraud which led to the Cottrells' dispute with VEPCO, rather than on the fact that the Cottrells and all other members of the class they represent were threatened with termination unless they paid an amount which VEPCO unilaterally claimed was due, and that the threats were not accompanied by notice of the opportunity for a due process hearing.

When this action was filed the Cottrells were under threat of termination, the power company acting under the authority of paragraph XVI of the Terms and Conditions approved by the SCC. The threat of termination under these Terms and Conditions made their claim typical of that of other members of the class. The factual situation which precedes each individual threat of termination is no more relevant here than those which preceded the welfare terminations in Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) and its companion case Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970). The fact that an act of fraud preceded VEPCO's threatening the Cottrells with deprivation of an essential service is no more relevant here than was the fact that an unusual medical occurrence (the inexplicable recurrence of pain after surgical removal of an inguinal hernia) preceded the workmen's compensation carrier's terminating the worker's benefits in Dillard v. Industrial Commission of Virginia, 347 F.Supp. 71 (D.C.1972).

■ There are diverse issues of fact in all class actions. The individual members of a class will invariably reach an adversary posture with the defendant in different ways. But Rule 23(a)(3) does not require that the factual background of the named plaintiff's case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of their purported class. Taliaferro v. State Council, 372 F.Supp. 1378 (D.C., 1974). The Cottrells allege they were denied an opportunity for a hearing prior to termination and that such denial is unconstitutional. The sole relevant factual assertion is not only typical of the members of the purported class, it defines them. And for each the simple legal claim deriving from that fact is the same. The Cottrells' claim, for purposes of this suit, is not only typical of, but identical to the claims of the purported class.

Finally, in this regard, " 'Typicalness' is not a subjective test, authorizing a judge to dismiss a class action based on a substantial legal claim where he thinks some members of the class may prefer to leave the violation of their rights unremedied." 3B. Moore's Federal Practice, 23–327. But it was exactly this erroneous interpretation of the term that was applied in Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir. 1972), vacated 409 U.S. 815, 93 S.Ct. 66, 34 L. Ed.2d 72 (1972); Lucas v. Wisconsin Electric Power Co., 466 F.2d 638 (7th Cir. 1973), cert. den., 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973); and Ward v. Luttrell, 292 F.Supp. 165 (E.D. La.1968), all cited in defendant VEPCO's Memorandum. See also, Wilson v. Kelley, 294 F.Supp. 1005 (N.D.Ga.1968),

where on the plaintiff's request to abolish all road camps in Georgia and house all prisoners in the state penitentiary the court applied a subjective test and denied class status because it was not convinced that all members of the purported class would desire the relief requested by the plaintiff, but in the same case the court considered and approved class action status with regard to a request by black and white plaintiffs to desegregate all Georgia penal facilities, without considering whether the other members of the purported class would agree with this request for relief.

■ Once named plaintiffs have been shown an identifiable class such as would satisfy subsection (a)(2), as here, they need show only that they are members of that class with the common issue occupying essentially the same position in their claim as in the claims of the unnamed members. The Court finds further analysis of individual subjective concerns of purported class members unnecessary to satisfy this subhead.

*Adequacy of Representation*

■ The question of whether a named plaintiff adequately represents the interests of a class of similarly situated persons is closely related to the question of whether his claim is typical with that of the other class members, and whether there are common questions of fact or law which link him with the other class members. Thus, much of what has already been stated in the commonality and typicality sections of this memorandum applies as well to this question. Brevity and clarity will be served by focusing on the analysis of the Court in Mersay v. First Republic Corp. of Am., 43 F.R.D. 465, 469 (S.D.N.Y. 1968), where it was said that "(T)he requirement of adequate representation comprises only two elements: (a) that the interests of the representative party must coincide with those of the class; and (b) that the representative party and his attorney can be expected to prosecute the action vigorously."

Defendants argue that the Cottrells seek relief which is antagonistic to the interests of members of the class they seek to represent. As the Court understands the argument, it is the same upheld in Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir.), cert. granted, vacated as moot, 409 U.S. 815, 93 S. Ct. 66, 34 L.Ed.2d 72 (1972). There the Court, in approaching a claim similar to that advanced here, stated:

. . . The class is alleged to include all those persons who reside in St. Paul who have made application to Northern for utility service. It is possible that all such persons who are actual subscribers would share the desire of the Ihrkes for a change in the rules and regulations which would require adequate notice prior to termination of their utility service. But it is highly unlikely that the claim of the Ihrkes that a hearing should be required after notice and prior to termination, is typical of the claim of the class. It is likely that some customers of Northern would feel that the additional expense of such a procedure if indeed required, could conceivably result in a rate increase to all customers, and this certainly would not be considered desirable by all of the subscribers of Northern. 459 F.2d 572–573.

Initially, it must be noted that the class in the case at bar is considerably narrower than that in Ihrke. Here, class members include not all subscribers but only those whose electricity has been cut off for non-payment or for whom such cut off is imminent. The likelihood of a desire for procedural due process must be assumed greater in such a group than with users of electricity in general.

Second, the entire thrust of defendants' argument on this motion is that few actual hearings would be necessary since few factual disputes exist by the time of actual termination.

Third, the cost of what hearings actually are held if plaintiffs prevail will presumably be distributed over VEPCO's

approximately one million customers. If the number of persons taking advantage of the opportunity plaintiffs seek is relatively small, the costs to members of the purported class will be infinitesimal and cannot reasonably be considered an overriding concern. If the number is large, the willingness of persons to prepare for and attend such hearings would also undercut defendants' assertion that little desire for such hearings exists. It must be considered that participation in such hearings is not "free" to the subscriber in terms of time and trouble even if the institutional costs of the hearing panel are spread over all subscribers.

■ Nor is this reasoning the sole basis for the Court's rejection of the *Ihrke* theory in this case. The Court can only assume that the choice of constitutional government implies that persons desire their constitutional rights to be available. Individual constitutional liberties and guarantees by definition put a burden on government which must eventually be economically borne by its citizens.[2] While reasons might exist in individual cases which would lead to a desire to waive a right rather than bear proportionally the cost of its provision, absent evidence as to individual decisions, the presumption must go against waiver. Thus plaintiffs need not affirmatively prove an individual calculus on the part of each class member that leads him to reject waiver. The showing that the Court's decision will have the same practical effect on all class members, i. e., each will pay any marginal cost increase and each will have a similar opportunity for a hearing if desired, is sufficient to satisfy plaintiffs' initial burden. This showing has been made.

■ Defendants argue that the Supreme Court's disposition of *Ihrke* "clearly illustrates that the high Court is in accord with the Eighth Circuit's ruling"

on the class action question. The full Supreme Court decision on this case reads simply:

> Certiorari granted, judgment vacated, and case remanded with instructions to dismiss case as moot. 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972).

Whatever judicial insight can be gleaned from this opinion, it does not go to the class action reasoning of the Court of Appeals for the Eighth Circuit. If the class action question was presented to the Supreme Court, and if it is assumed that the mooting of a named plaintiff's claim does not moot an otherwise viable class action, see Moss v. Lane Co., 471 F.2d 853 (4th Cir. 1973), the class issue presented by the Eighth Circuit's reasoning could be *mooted* only by substantive relief to the purported class some time prior to Supreme Court review. A conclusion of mootness simply does not go to the antagonistic interest theory advanced by the Eighth Circuit; rather it means that the legal soundness of that decision need not be reviewed.

With regard to the second element in determining adequacy of representation, the Court has no reservation concerning the vigor with which plaintiffs have prosecuted and are willing and able to further prosecute this action. They are represented by competent and experienced counsel. Defendant SCC's suggestion that Mr. Cottrell's absence at trial and Mrs. Cottrell's departure from the courtroom following her testimony indicate a lack of concern for the progress of this action is untenable. In complex legal actions parties speak and act through chosen counsel. The conduct of plaintiffs' counsel in this case has been unexceptionable.

*Type of Class 23(b)*

Plaintiffs in this case take the position that defendants have acted and have refused to act on grounds generally applicable to the class, thereby satisfy-

---

2. Such is the case, for example, where desegregation suits are brought and a remedy

economically and otherwise individually burdensome may well be required.

ing the requirements of F.R.C.P. 23(b)(2).

Defendants argue that the different factual situations presented by the individual members of the plaintiff class have been dealt with in a manner individually appropriate to each case. Nevertheless, since they have made no provision for implementing an ultimate hearing procedure, defendants have in each case terminated service or threatened termination without offering an opportunity for a prior hearing. This is the gravamen of the case, not the individual circumstances of each situation, and in this respect the defendants act the same way in every instance. Furthermore, plaintiffs ask only for injunctive and declaratory relief pursuant to which an opportunity for a hearing will be offered each customer prior to termination. This type of relief is particularly within the scope of F.R.C.P. 23(b)(2).

For the reasons stated above, plaintiffs' suit will be declared a proper class action, and defendants' motion to dismiss for lack of jurisdiction will be denied.

An appropriate order will issue.