CADY, Chief Justice
(dissenting).
I respectfully dissent. A basic and fundamental conflict exists between the members of the class. This conflict is inimical to the fundamental purpose of class actions and, under the law, does not permit Kragnes to pursue her claim as a class action. I would hold the district court erred in failing to decertify the class.
Several requirements must be met before our law permits class certification. One basic prerequisite is the class representative must “fairly and adequately” protect the interest of the class. Iowa R. Civ. P. 1.262(2)(e). This requirement relates to the associated rule that the claim of the class representative be typical of that of the other class members. When a conflict exists between class members that relates to the issues and is fundamental to the case, class certification is improper. Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir.2003).
The fundamental conflict in this case can be traced to the fundamental economic reality of the relationship between a city and its people. A city is its people, and a government is established by the people to govern and provide public services and protection for the benefit of the people. In turn, the people provide revenue to the government so it can operate to carry out its vital public mission. Thus, the public *517 mission pursued by government is, one way or the other, paid by the people.
In this case, the City of Des Moines sought to raise additional revenue for the purpose of providing more public services in the form of additional police and fee protection, enhanced public library access, and needed repairs to deteriorating neighborhoods. A city is authorized to raise revenue for such purposes. However, the particular means utilized by the City to raise the revenue was ultimately found in this case to be contrary to the law, but not until the revenue had been collected and spent on the needed services that have been enjoyed by the public.
The representative plaintiff brought this lawsuit not only to force the City to utilize a lawful means to collect its needed revenue, but also to obtain a judgment on behalf of all people who paid the fee equal to the total amount of the revenue that had been collected through the illegal fee. Class certification allowed her to lump together all residents who had paid the illegal tax to elevate the amount of the claim into a substantial judgment. The judgment is so large that the City will now need to raise additional revenue or reduce City services to refund the improper fee to all the residents who paid it. This inevitable result is not speculative. It is logic. It is also economic reality based on sound economic principle. To pay the judgment to the class, the City will need to use existing revenue belonging to the class, tax the class, or cut services provided to the class. These consequences necessarily divide the class and render its members antagonistic. There is little utility in suing yourself, especially when the associated attorney fees and litigation expenses of suing yourself will run into the millions of dollars. Most people would be unwilling to pursue litigation under such circumstances.
Accordingly, this case could not present a more basic conflict between a representative plaintiff and those members of the class who would not want to force city government to find additional revenue to pay the judgment that will inevitably adversely affect most members of the class. In other words, the lawsuit is a microcosm of the larger tension in society between those who focus on immediate gratification and those who seek to make decisions today with future consequences in mind. This case forces the latter to join in the approach of the former. In this case, the remedy seeks an immediate perceived benefit at a future cost that makes the benefit an illusion. This sleight of hand is found at the heart of the case and presents a most basic conflict that pits the representative plaintiff, who advocates for a refund, against those class members who understand the futility of a refund and would advocate against it. It is simply unfair for our class action law to be used as a vehicle to grow a judgment into an amount that will force the City to take action adverse to the class. A plaintiff who pursues such a goal cannot possibly represent the interest of the remaining class members.
This type of inherent conflict in a class is inconsistent with the use of class action and is not permitted by our law. An analogous case that best illustrates this point is Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir.), vacated as moot, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972). Like this case, Ihrke involved an action brought by a utility customer on behalf of all utility customers. 459 F.2d at 567. The legal claim alleged the regulations governing the termination of utility service were unconstitutional because customers had been deprived of adequate prior notice and a fair and impartial hearing prior to the termination of utility services. Id. The court found the class was inherently antag *518 onistic because not all customers would be in support of a pretermination hearing. Id. at 572. Instead, some customers would “likely ... feel” that the additional expense of providing a termination hearing would “conceivably result in a rate increase to all customers.” Id. at 572-73. As with the utility customers in Ihrke, many Des Moines taxpayers would be reluctant for government to make expenditures when they realize those expenditures come from their pocket, one way or the other.
Other courts have expressed a slightly different principle that a class action cannot be maintained when people in the class would oppose the claim or the remedy sought. In Mayfield v. Dalton, 109 F.3d 1423, 1424 (9th Cir.1997), two members of the Marine Corp. sought to certify a class consisting of all members of the armed forces to challenge the constitutionality of a Department of Defense requirement that all soldiers provide a DNA sample for future analysis. The court found the class to be antagonistic because there were “undoubtedly” people in the class who would not oppose the DNA repository and who would want the requirement enforced. Mayfield, 109 F.3d at 1427. In this case, there are undoubtedly people in the class who do not oppose the illegal fee used to enhance City operations.
Antagonism also exists in a class when the class consists of people who utilize limited resources from a common pool, and named members of the class seek a remedy that will result in a shift of these limited resources. See Miller v. Univ. of Cincinnati, 241 F.R.D. 285, 290 (S.D.Ohio 2006) (finding an inherent conflict precluding class certification when female members of a university rowing team claimed the university was violating Title IX and sought to establish a class consisting of all female participants in university athletic programs because the remedy of compliance with Title IX would not be amenable to all class members because compliance would likely only be achieved by shifting resources from one sport to another); see also Cherokee Nation of Okla. v. United States, 199 F.R.D. 357, 364-65 (E.D.Okla.2001) (finding named plaintiffs’ interests were antagonistic because the agency would be required to reimburse money from limited appropriations in order to make the required refund). There are undoubtedly many people in Des Moines who would oppose a rather insignificant individual refund that will only result in a substantial reallocation of resources or additional taxation.
The conflict in this case is as fundamental as the legal principles that demand the class to be decertified. Class actions are institutions of representation, not opposition. They are institutions of social value and public good, not personal gain. The class needs to have a sense of mission so that all interests are represented. See Hansberry v. Lee, 311 U.S. 32, 44, 61 S.Ct. 115, 119, 85 L.Ed. 22, 28 (1940) (holding plaintiff seeking to enforce an agreement cannot represent class members who do not want it enforced); see also 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1768, at 389 (3d ed.2005). This case is as far from a class action as a case could be. A single plaintiff should not be permitted to drag nearly an entire community into a lawsuit that seeks a remedy akin to suing yourself.
Kragnes certainly had a right to challenge the government action. She had a right to turn to the courts to force the City to use the proper channels to raise city revenue. She was free as well to seek her own refund. At times, the pursuit of principle alone might be worth the cost, but a class action nevertheless requires the pur *519 suit to be shared by the class. When public monies or public sacrifice will be used to pay for a public interest lawsuit, the representative class requirement for class certification ensures that the public actually supports the effort. Considering the marginal utility of the remedy sought, considering the subsequent legislative adoption of the challenged fee, considering the public benefit provided by the challenged government action, and considering the substantial public expense of litigation, it is doubtful many class members would share in Kragnes’s enthusiasm for her lawsuit. One of the benefits of a class action is that it allows a plaintiff to pursue a claim by giving an attorney a financial incentive to provide representation. It also allows the court to dispose of a multiplicity of identical individual claims in an economical manner. In this case, however, there was no evidence that similar claims were filed or even the fear of a multitude of similar claims. Moreover, while it is important to provide a financial incentive for legal representation in meritorious litigation, it should not, in the end, become the only benefit of a class action.