Ronnie ANDERSON, Chauncey Campbell, Thomas Edwards, Robert Speciale, Francis Stewart and John Whittaker, on behalf of themselves and all others similarly situated

v.

Frank L. RIZZO, Individually and as Mayor of the City of Philadelphia, Joseph F. O'Neill, Individually and as Police Commissioner of the City of Philadelphia, Philip Denicola, Individually and as Commanding Officer of the Automotive Services Division of the Police Department of the City of Philadelphia.

Civ. A. No. 77–2795.

United States District Court, E. D. Pennsylvania.

Aug. 14, 1978.

Richard P. Perna, David A. Scholl, Community Legal Services, Philadelphia, Pa., for plaintiff.

Barry J. Grossman, Asst. City Sol., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, attacks the constitutionality of procedures used by the City of Philadelphia for dealing with allegedly abandoned motor vehicles. The defendants are City officials responsible for employing these procedures. The case is before me on a motion for class certification.

Section 12–1120 of the Philadelphia Code provides that any vehicle parked on a street or highway which is "not capable of being moved under its own power; or with deflated tire or tires; or without tire or tires; or without current license tags" "may be removed by the Police Department as abandoned if the vehicle is not moved after five days' written notice for removal has been sent to the registered owner thereof. . . ." The ordinance provides for removal prior to notice if the vehicle is a "safety hazard". It states that if the owner of the vehicle fails to reclaim the vehicle within fifteen days of its removal, "the Police Department shall request an investigation by the Secretary of Revenue pursuant to the provisions of Section 1220(c) of the Vehicle Code."

Plaintiffs contend that, contrary to § 12–1120, the City does not provide notice prior to removing vehicles, even though the vehicles are not "safety hazards"; rather, after the vehicle has been seized, the City sends a "Notice to Claim Vehicle" form, which demands payment of towing and storage fees to reclaim the vehicle, and the City refuses to permit recovery of personal property inside the vehicle until the fees are paid. It is alleged that the fees cannot be afforded by low income residents of the City, causing them to lose their cars and property within the cars. According to the complaint, if a seized vehicle is not recovered by the owner within fifteen days, it is sold or destroyed and the owner is not paid the proceeds. No opportunity is provided to contest the seizure or destruction of the vehicle.

The six named plaintiffs each allege loss of their property as a result of this system. Ronnie Anderson has had two cars seized, one of which was inoperable and was in the process of being repaired[1] and the other of which lacked current license tags but had a notice posted that new tags were awaited; he asserts that he is unable to pay the fees demanded for recovery of the cars. Chauncey Campbell's automobile was seized while undergoing repairs by a bailee; Campbell received no notice of the seizure, and the car was destroyed. Thomas Edwards' car was towed away after it had been damaged in a collision and, while awaiting appraisal of damages, had been vandalized. He had placed new license plates on the car in response to a policeman's advice. The car was destroyed after he was unable to pay the towing fees.[2] Robert Speciale lost two vehicles, both of which were marked by the City as "abandoned" although they were in running condition;[3] he was unable to pay the fees to recover them. Francis Stewart's vehicle was seized because it did not have current license plates. The car had been in "excellent condition," but, when Stewart went to the City garage to recover it, he discovered that it had been badly damaged; the City has not compensated him for the damage. John Whittaker's car was seized while it was inoperable and he was attempting to repair it; he was unable to pay the fees to recover it and believes it has been destroyed.

Plaintiffs contend that the City's procedures violate the Due Process Clause because they do not provide adequate notice and opportunity to be heard before deprivation of property takes place. They also contend that the definition of "abandoned" vehicle in the City ordinance is irrational and unreasonable, and that the term "safety hazard," as used in the ordinance, is unconstitutionally vague.[4] They seek declaratory and equitable relief and compensatory and punitive damages.

■ In this motion, plaintiffs move for certification of the following class:

"All owners of motor vehicles whose vehicles have been seized, detained, and sold or destroyed by the Automotive Service Division of the Police Department of the City of Philadelphia in the past, or who will be subject to such practices in the future."

A case may be maintained as a class action only if:

(1) "the class is so numerous that joinder of all members is impracticable" (Fed. R.Civ.P. 23(a)(1));

(2) it contains "questions of law or fact common to the class" (Fed.R.Civ.P. 23(a)(2));

(3) the representative parties have claims or defenses typical of those of the rest of the class (Fed.R.Civ.P. 23(a)(3));

(4) the representatives "will fairly and adequately protect the interests of the class" (Fed.R.Civ.P. 23(a)(4)); and

(5) either

(a) prosecution of separate actions would create a risk of inconsistent adjudications establishing incompatible standards of conduct, or of adjudications which could impede the ability of nonparties to protect their interests (Fed.R. Civ.P. 23(b)(1));

(b) declaratory or injunctive relief is needed as to the class as a whole because a party opposing the class "has acted or refused to act on grounds generally applicable to the class" (Fed.R.Civ.P. 23(b)(2)); or

(c) questions of law or fact common to the class members predominate over

---

1. The car had just been purchased, and the seller's name was still on the title. As a result, notice of the seizure was sent to the seller, rather than to Anderson.

2. Edwards asserts that the City's complaint office assured him that he would not have to pay any charges but that the City garage refused to surrender the car to him without payment.

Personal property in the automobile also was lost.

3. One of the cars had expired license tags, but Speciale had tendered the fee for new registration.

4. They also assert pendent state claims of conversion and negligence.

questions affecting only individual members and a class action is the superior method for adjudication of the controversy (Fed.R.Civ.P. 23(b)(3)).

The defendants do not contest the first requirement ("numerosity").[5] With respect to the last requirement, plaintiffs contend that the case is one presenting a possibility of inconsistent adjudications if class certification is not granted (Fed.R.Civ.P. 23(b)(1)(A)) and also is one requiring class-wide declaratory or injunctive relief (Fed.R. Civ.P. 23(b)(2)). These contentions are not contested, and I agree that at least one of these provisions is applicable.[6] The dispute focuses on the remaining three requirements—"commonality", "typicality", and "adequacy of representation". Each of these issues can quickly be resolved.

█ As to "commonality", the defendants contend that there are no common questions of law or fact because—

"[M]any of the 7000 cars towed by the City of Philadelphia as abandoned during a year are, in fact, abandoned and many of them are illegally parked. Thus, the City contends that there is no common issue of law but rather each case revolves around whether the car was legally or illegally parked and whether it was, in fact, abandoned."

Defendants' Memorandum, at 1–2.

As plaintiffs point out, however, this argument fails to grasp the essence of plaintiffs' claims. The plaintiffs contend that the procedures used by the City are constitutionally infirm. They do not assert that every car seized by the City was not abandoned or illegally parked, but merely that, prior to the seizure and disposition of the property, the owner is entitled to some procedural safeguards. Since the substantive validity of each seizure is not in question, the fact that each seizure must stand or fall on its own facts is beside the point. The question presented is whether the procedures employed with respect to all seizures are constitutional. That question is common to every member of the proposed class. *See Cottrell v. Virginia Electric & Power Co.*, 62 F.R.D. 516, 519–20 (E.D.Va.1974).

Defendants make a similar argument with respect to typicality. They point out that seizures may occur for different reasons—*e. g.*, illegal parking, inoperable condition of the car, lack of current registration. They contend, citing *Northern Acceptance Trust 1065 v. AMFAC, Inc.*, 51 F.R.D. 487 (D.Hawaii 1971), that insofar as a representative does not assert one of these reasons, his claim may be "antagonistic" to that of another member of the class whose car was seized for that reason. Once again, however, this argument loses sight of the fact that plaintiffs do not merely attack the reasons for the seizures, but the procedures employed in making them. Since the plaintiffs, as potential representatives, allege that they have suffered injury as a result of these procedures, their claims are typical of those of the class.

It is true that in attacking the rationality of the definition of "abandoned" vehicle in the City ordinance, the plaintiffs do challenge the constitutionality of seizing automobiles for certain reasons. That fact does not alter the analysis, however. Some if not all, of the plaintiffs have had their cars seized for reasons that are challenged.

---

**5.** The parties agree that the City tows away thousands of cars each year. Each owner of a vehicle seized in this manner would be a potential class member.

**6.** The predominant aim of this action is declaratory and injunctive relief as to the Philadelphia procedures for dealing with seizure and disposition of vehicles. The seizures and dispositions continue to be exercised by the City. Civil rights actions of this type commonly fall within the Rule 23(b)(2) category, which applies to cases requiring classwide declaratory or equitable relief. *See* Advisory Committee on Rules, Note to 1966 Amendment to Rule 23,

Subdivision (b)(2); 3B Moore's Federal Practice ¶ 23.40[2], [3] (2d ed. 1978). The category pertains even though, as in this case, damages are sought as well as equitable relief. 3B Moore's, *supra*, ¶ 23.40[4]; *see Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 250–53 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). *See also Samuel v. University of Pittsburgh*, 538 F.2d 991, 995–97 (3d Cir. 1976) (reversing decertification of Rule 23(b)(2) class because of individual restitution claims). Since Rule 23(b)(2) applies, I need not decide whether certification also is proper under Rule 23(b)(1)(A).

76

Their cases therefore are typical of those of class members whose vehicles were seized for similar reasons. I see nothing internally "antagonistic" about a joint challenge to the use of a variety of reasons for seizure, but, if problems do arise, subclasses can be formed to deal with challenges based on each reason. *See* Fed.R.Civ.P. 23(c)(4)(B). In the meantime, I see no reason why a challenge to the constitutionality of the entire definition used in the ordinance cannot be made by these representatives.

 Defendants also contend that there is no typicality because "the remedies and measure of damages within the representative group are inconsistent". Defendants' Memorandum, at 3. Of course, the damages recoverable by each plaintiff will differ, since each car has a different value. In some cases, return of the car, rather than damages, will be the proper remedy. These differences in relief do not alter the fact that the central issue of the case—the constitutionality of the City's procedures—are common to all class members and are typical in the claims of the representatives. As Judge Merhige stated in *Cottrell, supra*:

"There are diverse issues of fact in all class actions. The individual members of a class will invariably reach an adversary posture with the defendant in different ways. But Rule 23(a)(3) does not require that the factual background of the named plaintiff's case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of their purported class. . . .

Once named plaintiffs have been shown an identifiable class such as would satisfy subsection (a)(2), as here, they need show only that they are members of that class with the common issue occupying essentially the same position in their claim as in the claims of the unnamed members. The Court finds further analysis of individual subjective concerns of purported class members unnecessary to satisfy this subhead."

62 F.R.D. at 520–21.

Finally, with respect to adequacy of representation, defendants contend that this requirement is not met because "plaintiffs do not appear to be financially able to bear the costs of adequate representation in notifying class members as required by law and in meeting other litigation expense as indicated in their claims." Defendants' Memorandum, at 4. On this matter, suffice it to say that notice to class members is not required for the Rule 23(b)(1)(A) and (b)(2) class asserted in this case. *See* Fed.R.Civ.P. 23(c)(2); Advisory Committee on Rules, Note to 1966 Amendment of Rule 23, Subdivisions (c)(2) and (d)(2); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 254–57 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). I see no reason why the named plaintiffs cannot serve as adequate class representatives. *See generally Axelrod v. Saks & Co.*, 77 F.R.D. 441, 444–45 (E.D.Pa.1978).

I conclude that certification of the class requested by plaintiffs is proper. Their motion will be granted.