Ronnie ANDERSON et al.

v.

Frank L. RIZZO et al.

Civ. A. No. 77-2795.

United States District Court,
E. D. Pennsylvania.

May 4, 1979.

---

Richard P. Perna, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Barry J. Grossman, Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

LUONGO, District Judge.

Ronnie Anderson and nine other named plaintiffs filed the amended complaint in this class action[1] on December 15, 1978. The complaint, which is based on the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1976), challenges the procedures employed by the Philadelphia police in towing, detaining, and disposing of motor vehicles allegedly abandoned on public streets. In Count I, plaintiffs assert a classwide denial of procedural due process, for which they seek injunctive and declaratory relief. In Count II, the named plaintiffs assert pendent state-law tort claims for damages sustained when their individual vehicles were towed and sold. Defendants are the Mayor of the City of Philadelphia, the Police Commissioner of the City of Philadelphia, the present and former commanding officers of the Automotive Services Division of the Police Department of the City of Philadelphia, and the City itself.

Presently before me is plaintiffs' motion for summary judgment with respect to the classwide procedural due process claim only. Fed.R.Civ.P. 56(a), (d). For the reasons hereafter stated, I conclude that this motion should be denied.

Plaintiffs do not contend that the City lacks power to remove abandoned vehicles from its streets. Rather, plaintiffs urge that the City must provide adequate procedures so that a person whose vehicle has been towed as "abandoned" may attempt to show that it was *not* abandoned, and (if he succeeds) secure its return without having to pay towing or storage charges to the City.

■ Apparently the parties agree that the towing, detention, and disposal of an allegedly abandoned motor vehicle deprive the vehicle's owner of "property" embraced by the fourteenth amendment, and that the owner must therefore be afforded procedural due process when such action is taken. The parties differ sharply, however, over two narrower issues. First, what specific procedures, if any, are required as a matter of due process at each stage leading up to the final disposal of the vehicle? Second, have defendants here provided vehicle owners with whatever procedures are required in this context as a matter of due process?

At the outset of this litigation, plaintiffs' due process claim centered on the lack of adequate procedures. Thus, plaintiffs alleged in their original complaint:

In no instance are the defendants or [the Automotive Services Division of the Police Department] required to prove before any impartial body that their action with respect to a particular vehicle was legal and proper. The registered owner of a seized vehicle is not given any opportunity to contest the legality and propriety of the seizure either prior to the retention of the vehicle and its contents upon condition of payment of alleged towing and storage charges or prior to the sale or destruction of the vehicle.

Complaint (Document No. 1) ¶ 92.

During the course of discovery, however, several "procedures" surfaced. Plaintiffs obtained a copy of Directive 36, an internal Police Department document issued by defendant O'Neill that spells out certain procedures to be followed in dealing with abandoned vehicles. Exhibit I to Amended Complaint (Document No. 30). Defendants' answers to interrogatories suggested that

1. On August 14, 1978, I entered an order certifying this case as a class action under Rule 23(b)(2). Document No. 21. The class consists of:

All owners of motor vehicles whose vehicles have been seized, detained, and sold or destroyed by the Automotive Services Division

of the Police Department of the City of Philadelphia in the past, or who will be subject to such practices in the future.

*Id.*

*See generally Anderson v. Rizzo,* 80 F.R.D. 72 (E.D.Pa.1978).

after a vehicle has been towed as "abandoned," the owner may have an informal hearing before defendant Denicola, at which he may seek to prove that his vehicle was not abandoned. *Compare* Plaintiffs' Second Set of Interrogatories (Document No. 12) ¶ 10 *with* Defendants' Answers (Document No. 16) ¶ 10. Defendants also suggested that the owner may appeal an unfavorable decision by defendant Denicola to defendant Small, the current commanding officer of the Automotive Services Division. *Id.* Finally, defendants asserted that before a vehicle is towed as "abandoned," the police issue a traffic violation report charging the registered owner with abandoning the vehicle, a violation of the Pennsylvania Vehicle Code.[2] The owner is then summoned to appear in Traffic Court, where, in the course of presenting any defenses to the alleged traffic violation, he may establish that the vehicle was not abandoned and thus secure its release without payment of towing or storage charges. *See* Sheldon Affidavit ¶ 4(e).

On the present factual record, all of these procedures are but shadowy forms. Their very existence is open to some question, and I could not even attempt at this point to determine whether they meet the requirements of due process. Plaintiffs, recognizing that I cannot assess the *adequacy* of these asserted procedures on the record now before me, have shifted the focus of their procedural due process claim. They are willing to assume, for purposes of this motion, that the various procedures just mentioned afford vehicle owners adequate opportunities to contest the propriety of any actions taken with respect to their allegedly abandoned vehicles. Plaintiffs now seek partial summary judgment on a much narrower theory. They argue that due process also requires defendants to *advise* vehicle owners that such procedures exist, and that defendants have plainly failed to do so. Thus, even assuming that defendants' procedures satisfy the demands of due process, plaintiffs contend that defendants' failure to inform vehicle owners that these procedures are available amounts to an independent violation of the owners' constitutional rights.

There is, I concede, much merit in this position. Even constitutionally adequate procedures are useless if those whose property is being taken are unaware of their existence. And *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 13–15, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) certainly teaches that, at least in some contexts, due process requires that interested persons be informed of the availability of procedures through which they may challenge actions that deprive them of their property. Nevertheless, I believe that it would be inappropriate to enter partial summary judgment in plaintiffs' favor at this time.

Without belaboring the point, I think that prudence counsels against resolving constitutional questions—even narrow ones—on a factual record as weak as this one. The issue tendered by plaintiffs is whether due process requires defendants to inform vehicle owners of the existence of the various procedures described earlier. I am most reluctant to address this issue until I have a better understanding of the context in which the problem typically arises. It may be, for example, that the average vehicle owner who desires to challenge the determination that his vehicle was "abandoned" can glean from the notice mailed to him that he should communicate with defendant Small in order to do so. *See* "Notice of Vehicle in Police Custody," Exhibit B to Plaintiffs' Reply Memorandum (Document No. 29).[3] Admittedly, the named plaintiffs' own experiences, as reflected in their affidavits and depositions, suggest that informal hearings before defendant Denicola (with the possible appeals

---

2. *See generally* 75 Pa.Cons.Stat.Ann. § 3712 (Purdon 1977) (making abandonment of a vehicle on any highway a summary offense).

3. Plaintiffs have assumed, for purposes of this motion, that the "Notice of Vehicle in Police Custody" form is sent via certified mail to the registered owner of each vehicle towed as abandoned. *See* Small Affidavit.

to defendant Small) are not routinely offered to vehicle owners who dispute the basis for towing their vehicles. But rather than ruling, based on a broad reading of *Craft, supra,* that due process requires defendants to inform *all* vehicle owners of *all* available procedures and remedies, I would prefer to postpone decision until I can better assess the need for such notification with respect to each particular procedure that defendants (assertedly) provide to vehicle owners. *See generally Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

I am not unsympathetic to the twin concerns voiced by plaintiffs' counsel: defendants continue their allegedly unconstitutional practices while this litigation is pending, and defendants' counsel has proven remarkably sluggish in responding to motions and to discovery requests. On the other hand, these difficulties cannot justify premature adjudication of plaintiffs' constitutional claims. I will simply leave it to plaintiffs' counsel to use the procedures available under the Federal Rules of Civil Procedure to insure that this litigation proceeds in an expeditious fashion from this point on.

For the reasons set out above, I shall enter an order denying plaintiffs' motion for partial summary judgment.