Janice JORDAN, Anna Quinn, and Joy Johnson, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Richard E. LYNG, in his official capacity as Secretary of the United States Department of Agriculture,

and

William L. Lukhard, in his official capacity as Commissioner of the Virginia Department of Social Services, Defendants.

No. CA 86–0646–R.

United States District Court,
E.D. Virginia,
Richmond Division.

May 4, 1987.

Steven L. Myers, Virginia Legal Aid Soc., Inc., Emporia, Va., J. Michael Gray, Virginia Legal Aid Soc., Inc., Halifax, Va., Claire E. Curry, Charlottesville-Albemarle Legal Aid Soc., Charlottesville, Va., for plaintiffs.

Thomas J. Czelusta, Asst. Atty. Gen., John A. Rupp, Sr. Asst. Atty. Gen., G. Wingate Grant, Asst. U.S. Atty., Richmond, Va., John Docken, Office of the General Counsel, U.S. Dept. of Agriculture, Washington, D.C., for defendants.

## OPINION

RICHARD L. WILLIAMS, District Judge.

Plaintiffs have brought this action for declaratory and injunctive relief to redress

alleged violations of their rights under Section 5(d)(3) of the Food Stamp Act of 1977, 7 U.S.C. § 2014(d)(3) (1982) (amended 1985), and Section 1509(a)(2)(A) of the Food Security Act of 1985, 7 U.S.C. § 2014(d)(3) (Supp. III 1985). The controversy centers on the federal defendant's definition of "institution of higher education" as it is used in the Food Stamp Act of 1977. Plaintiffs assert that for the period of 25 August 1981 to 22 August 1986, the federal defendant's definition of "institution of higher education," which excluded institutions that did not require a high school diploma or the equivalent for admission, was in violation of the Food Stamp Act. The matter is now before the Court on cross-motions for summary judgment. For the reasons stated below, the Court grants plaintiffs' motion and enters judgment in their behalf.

## STATEMENT OF FACTS

The federal food stamp program was established in 1964 to alleviate hunger and malnutrition among the needier segments of our society. 7 U.S.C. § 2011. The program is administered by the Secretary of Agriculture ("the Secretary") pursuant to the Food Stamp Act of 1977 (7 U.S.C. §§ 2011 et seq.) (1982) (amended 1985) ("the Act"), which replaced the Food Stamp Act of 1964.

Pursuant to the 1977 Act, food stamps are distributed free of charge to eligible households. 7 U.S.C. § 2017(a). Recipients use the stamps to purchase food at approved food outlets, although they cannot be used to purchase cigarettes, alcohol-ic beverages or any non-food item. 7 U.S.C. §§ 2012, 2018. The federal Government ultimately redeems the food stamps at their face value. 7 U.S.C. § 2013(a).

While the administration of the program at the federal level is committed to the Secretary of Agriculture, the program requires the cooperation of both the federal and state governments. Each state choosing to participate in the program has a state agency that administers the state's responsibilities under the Act. 7 U.S.C. §§ 2012, 2013(a), 2020. In Virginia, that agency is the Virginia Department of Social Services. The state agencies are responsible for the certification of household eligibility under the standards set by the 1977 Act (as amended) and the regulations issued by the Secretary. 7 U.S.C. § 2020(a). The states are responsible for calculating the amount of food stamps that eligible applicants receive, as well as actually distributing the stamps. *Id.*

The definition of "institution of higher education" has significance in two areas of the food stamp program—eligibility and income determination. The issue in this case centers on its use in the income exclusions of Section 5(d) of the Act. Specifically, that portion of educational assistance funds used for "tuition and fees at an institution of higher education"[1] is to be excluded in determining income for food stamp purposes. 7 U.S.C. § 2014(d)(3). The term is also used in Section 6(e) of the Act, which deals with student eligibility generally. 7 U.S.C. § 2015(e).[2]

---

1. The term "institution of higher education" was changed to "institution of post-secondary education" in the Food Security Act of 1985, Pub.L. No. 99–198, § 1509(a)(2)(A), 99 Stat. 1354, 1569. *See* 51 Fed.Reg. 30,048 (1986) (to be codified at 7 C.F.R. 273.9(c)(3)).

2. Over the last decade or so, Congress has focused on the issue of student participation in the food stamp program. It has attempted several times to limit the participation of students who constitute the "voluntary poor," *i.e.*, those students from relatively higher income families who would not have been eligible for food stamps had they not chosen to go to college. *See* H.R.Rep. No. 464, 95th Cong., 1st Sess. 101–104, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1704, 1978, 2079–2082. For example, the 1977 Act restricted student participation by disqualifying (with certain exceptions) any person who was enrolled at least half-time in an institution of higher education and who was a tax dependent of another food stamp household. Those still eligible by that standard also had to meet certain work requirements. *Id.* at 118–119, *reprinted in* 1977 U.S.Code Cong. & Ad. News at 2088–2089. The named plaintiffs, however, fall within one or more of the exceptions to student disqualification. They are eligible for food stamps, regardless of their status as students, because they receive aid to families with dependent children under Part A of Title IV of the Social Security Act (42 U.S.C. § 601 *et seq.*). *See* 7 U.S.C. § 2015(e)(3)(D); 7 C.F.R. § 273.5(b)(1)(v) (1986).

The Food Stamp Act of 1977 was enacted on 29 September 1977. Section 5(d) provided in pertinent part:

Household income for purposes of the food stamp program shall include all income from whatever source excluding only ... (3) all educational loans on which payment is deferred, grants, scholarships, fellowships, veterans' educational benefits, and the like to the extent that they are used for tuition and mandatory school fees at an institution of higher education....

7 U.S.C. § 2014(d)(3) (1982) (amended 1985). *See also* Food Stamp Act of 1977, Pub.L. No. 95–113, § 5(d), 91 Stat. 913, 962. The Act itself contained no definition of "institution of higher education." However, the House Agriculture Committee Report on the provision that became Section 5(d)(3) of the Food Stamp Act states:

The term "institution of higher education" refers, as the present regulations [to the 1964 Food Stamp Act] do, to an "institution providing post-high school education including, but not limited to, colleges, universities, and vocational and technical schools at the post-high school level." It would also include schools for the physically and for mentally handicapped or impaired and correspondence schools.

H.R.Rep. No. 464, 95th Cong., 1st Sess. 35, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1978, 2012. *See also* 7 C.F.R. § 271.3(e)(2)(i) (1978).

On 17 October 1978, the Secretary promulgated final regulations implementing Section 5(d) of the Food Stamp Act of 1977. 7 C.F.R. § 273.9(c)(3) (1986). *See also* 43 Fed.Reg. 47,904 (1978). "Institution of higher education" was defined as follows:

"Institution of higher education" means any institution providing post-high school education, including but not limited to, colleges, universities, and vocational or technical schools at the post-high school level.

7 C.F.R. § 271.2 (1981). *See also* 43 Fed. Reg. 47,882 (1978). This maintained the pre–1977 regulatory definition used in the income deduction for tuition and fees at higher education institutions under the 1964 Act.

The Secretary's 1978 definition of "institution of higher education," in conjunction with the educational income exclusion set forth at 7 C.F.R. § 273.9(c)(3), established a policy that excluded from household income under the food stamp program that portion of an educational grant, deferred student loan or other similar educational assistance used to pay tuition and mandatory school fees at any post-secondary educational institution, regardless of whether such institution required a high school diploma or equivalency certificate for enrollment. *See* 46 Fed.Reg. 43,021 (1981). [This policy is hereinafter referred to as the "1978 educational income exclusion policy."]

The state defendant implemented the 1978 educational income exclusion policy by promulgating § 704(H) of the Virginia Food Stamp Certification Manual ("the Virginia regulations"), effective 1 March 1977. *See* Virginia Food Stamp Certification Manual § 704(H) (3/77).

In 1980, the Food Stamp Act of 1977 was amended. Further restrictions were placed on student participation.[3] Section 139 of Pub.L. No. 96–249, 94 Stat. 357, 370 (1980) provided that, regardless of tax dependent status, any physically and mentally fit person between the ages of 18 and 60 who was enrolled at least half-time in an institution of higher education was prohibited from participation in the food stamp program *unless* he or she: (a) worked at least twenty (20) hours per week; (b) participated in the federally financed college work-study program during the regular school year; (c) were head of household; or (d) participated in the Work Incentive Program of Title IV of the Social Security Act.

While in 1977 Congress had provided a broad exception to the work registration requirement set forth in § 2015(d)(1) to "bona fide student[s] enrolled at least half-time in any recognized school, training program, *or* institution of higher education," 7 U.S.C. § 2015(d)(2)(C) (emphasis added), the 1980 amendments stated only that those enrolled in "institutions of higher edu-

---

3. *See supra* note 2.

cation" had to meet the new § 2015(e) restrictions on qualification. Pub.L. No. 96–249, § 140, 94 Stat. 357, 370 (1980). The Secretary interpreted Congress' use of only the term "institutions of higher education" in the 1980 amendment to § 2015(e) to mean that Congress did not intend that term to be all-inclusive and that "institutions of higher education" did not include all post-high school institutions.[4] *See* 46 Fed.Reg. 43,021 (1981).

The regulations as they existed at the time of the 1980 amendments did include all post-high school institutions within the definition of "institutions of higher education." *Id.* at 43,020. Recognizing that "[p]rior attempts by Congress to restrict student participation indicate that it was concerned that those who chose to attend school as a way out of poverty not be deemed ineligible to participate," the Secretary sought to limit the impact of the new student restrictions on eligibility by re-defining the term "institutions of higher education" to exclude therefrom all institutions that do not normally require a high school diploma or equivalency certificate for enrollment. *Id.* at 43,021.

> This definition would allow students of trade schools, such as auto mechanics or beauticians, to participate in the food stamp program while they are obtaining practical skills that would enable them to obtain better jobs.... Exempting these students [from the new eligibility restrictions] would be within Congressional intent to eliminate only those whose financial status would not qualify them for food stamps if they had not chosen to go to college. Additionally, such a definition would enable states to more easily determine which schools are institutions of higher education.

*Id.*

The Secretary's 1981 definition of "institution of higher education" provided as follows:

> "Institution of higher education" means any institution which normally requires a high school diploma or equivalency certificate for enrollment, includ-

ing, but not limited to, colleges, universities and vocational or technical schools at the post-high school level.

7 C.F.R. § 271.2 (1986). *See also* 46 Fed. Reg. 43,025 (1981).

While limiting the disqualification of students from the food stamp program, the new definition reduced some participants' benefits since non-"institutions of higher education" did not enjoy the benefit of the 7 U.S.C. § 2014(d)(3) exclusion. The Secretary's 1981 definition of "institution of higher education," in conjunction with the educational income exclusion set forth at 7 C.F.R. § 273.9(c)(3), established a policy that *included* as household income under the food stamp program that portion of an educational grant, deferred student loan or similar educational assistance used to pay tuition and mandatory school fees at a post-secondary educational institution admitting students without high school diplomas or equivalency certificates. [This policy is hereinafter referred to as the "1981/82 educational income exclusion policy."]

The state defendant implemented the 1981/1982 educational income exclusion policy by amending § 704(H) of the Virginia regulations, effective 1 April 1982. *See* Virginia Food Stamp Certification Manual § 704(H) (4/82).

In connection with its 1980/81 rulemaking, which was published in the Federal Register at 45 Fed.Reg. 46,035–46,042 (1980) and 46 Fed.Reg. 43,019–43,026 (1981), the "detailed statement" justifying such rulemaking that the Secretary provided to the Congressional agriculture committees pursuant to 7 U.S.C. § 2013(c) consisted of a copy of the preambles published at 45 Fed.Reg. 46,036–46,039 (1980) and 46 Fed.Reg. 43,020–43,025 (1981). The Secretary's stated purpose in re-defining the term "institution of higher education" in 1981 was to limit the effect of the student eligibility restrictions in Section 6(e) of the Food Stamp Act. The administrative record reveals that the Secretary entirely failed to consider the effect that the 1981

---

**4.** The House Agriculture Committee had made it clear, however, that "institution of higher education" referred to any school providing post-high school education. *See supra* p. ——.

re-definition of that term would have on its educational income exclusion policy. *See* 45 Fed.Reg. 46,035–46,042 (1980) and 46 Fed.Reg. 43,019–43,026 (1981). The result was that the Secretary's construction of Section 5(d)(3) of the Food Stamp Act, concerning the exclusion of educational income, was inadvertently changed by the defendant's 1981 implementation of the student eligibility provisions of Section 6(e).

In 1985, Congress amended Section 5(d)(3) of the Food Stamp Act of 1977 by striking out the phrase "higher education" and inserting in its place "post-secondary education." *See* 7 U.S.C. § 2014(d)(3) (Supp. III 1985). *See also* Food Security Act of 1985, Pub.L. No. 99–198, § 1509(a)(2)(A), 99 Stat. 1354, 1569.

The Report of the House Agricultural Committee on the provision that became Section 1509(a)(2)(A) of the Food Security Act states:

> For those few post-secondary students who are otherwise eligible for the food stamp program, the Food Stamp Act *excludes* as income the portion of any educational loans, grant, scholarships, veterans' educational benefits, and the like that is used to pay mandatory tuition fees....
>
> *In order to clarify the intent of present law,* the bill would ...
>
> The bill would also *clarify* that post-secondary school students who receive eduactional [sic] grants, loans, scholarships and the like can exclude these payments from income for food stamp purposes, to the extent they are utilized for tuition and mandatory fees, even though the institution they attend does not require a high school diploma as a prerequisite for attendance. *Under current regulatory policy,* this income exclusion is available only to students in post-secondary schools requiring a high school doploma [sic] as a condition of admittance.
>
> *By clarifying current law,* the Committee intends to extend this income exclusion to attendees of certain vocational schools and junior and community colleges that admit students without a high school diploma. It is the Committee's view that since many of the educational

programs affected by this amendment have a direct imact [sic] on the employability and economic self-sufficiency of the participants, the limited exclusion of grants, loans, and scholarships afforded under this provision constitutes sound approach toward reducing future dependency. As with other students, grants, scholarships, or loans utilized for purposes other than tuition and mandatory fees would be counted as income for food stamp purposes....

H.Rep. No. 271, Part 1, 99th Cong., 1st Sess. 142–43, *reprinted in* 1985 U.S.Code Cong. & Ad.News 1103, 1246–47 (emphasis added).

In addition, the Conference Report states with respect to Section 1509(a)(2)(A) of the Food Security Act:

> This provision *clarifies* that the portion of an educational grant, loan, or other educational assistance that goes toward tuition and mandatory fees at a post-secondary education institution would be excluded from income *even if that institution does not require a high school diploma as a condition for attendance.*

H.Conf.Rep. No. 447, 99th Cong., 1st Sess. 325, 522, *reprinted in* 1985 U.S.Code Cong. & Ad.News 2251, 2448 (emphasis added).

The Food Security Act of 1985 was enacted on 23 December 1985. Section 1801 of the Act provides:

> Except as otherwise provided in this Act, this Act and the amendments made by this Act shall become effective on the date of the enactment of this Act.

Many of the provisions applicable to the food stamp program had effective dates later than the statute's date of enactment but before 1 April 1987. Section 1583 of the Food Security Act provides that "[n]ot later than April 1, 1987, the Secretary shall issue rules to carry out the amendments made by this title."

On 22 August 1986, the Secretary revised his regulations to conform with Section 1509(a)(2)(A) of the Food Security Act of 1985 by amending 7 C.F.R. § 273.9(c)(3) "... to replace the reference to 'institution of higher education' and to clarify that

such institutions are those which admit students beyond the age of compulsory school attendance in the State as well as those which require students to have a high school diploma or equivalent certificate." *See* 51 Fed.Reg. 30,046 (1986). The Secretary expressly prohibited state agencies from restoring food stamp benefits lost before 22 August 1986 as a result of the Secretary's 1981/82 educational income exclusion policy. 51 Fed.Reg. 30,048 (1986) (to be codified at 7 C.F.R. § 272.1(g)).

The state defendant implemented the Secretary's 1986 educational income exclusion policy by amending § 704(H) of the Virginia regulations, effective 1 September 1986. *See* Virginia Food Stamp Certification Manual § 704(H) (9/86).

Plaintiff Joy Johnson is a food stamp recipient, and is now, and at all times relevant to this action was, beyond the age of compulsory school attendance under Virginia law. She is eligible to participate in the food stamp program regardless of her status as a "student." *See supra* note 2. During the 1985–86 school year, Johnson received a Pell Grant under the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070 *et seq.*, to attend the International Beauty School in Charlottesville, Virginia. Because the International Beauty School does not require a high school diploma or equivalency certificate for enrollment, Johnson's Pell Grant, all of which was used to pay tuition, was included as

household income for purposes of the food stamp program, thereby reducing her food stamp benefits from April through August 1986.[5]

On or about 3 April 1986, Johnson requested a local agency conference, fair hearing and/or restoration of her lost food stamp benefits. The State Hearing Authority of the Virginia Department of Social Services and the Virginia Board of Social Services thereafter took final administrative action affirming the determination of the local agency and refusing to restore Johnson's lost food stamp benefits.

Plaintiffs filed this suit on 17 October 1986 to have the Secretary's 1981/1982 regulation defining "institution of higher education" to exclude institutions not requiring a high school diploma or the equivalent for admission declared in violation of the Food Stamp Act provision granting an income exclusion for that portion of an educational grant, loan, scholarship or the like spent on tuition and mandatory fees at institutions of higher education.[6] Plaintiffs seek retroactive relief in the form of food stamp benefits for the period that that definition was in effect.[7]

## CLASS CERTIFICATION

Plaintiffs seek to maintain this action as a Rule 23(b)(2) class action. *See* Rules 23(a) and 23(b)(2), Federal Rules of Civil Procedure. The parties have, in fact,

---

5. Plaintiffs Jordan and Quinn present identical factual situations, except for the months in 1986 of lost benefits and the institution attended. Both Jordan and Quinn attended Southside Virginia Community College. In March of 1987, the week before oral argument on these cross-motions for summary judgment, the Secretary reevaluated his position concerning junior and community colleges in Virginia. Although these institutions do not require a high school diploma or equivalent for admission, the Secretary has determined that they are "institutions of higher education" within the meaning of Section 5(d)(3) of the Food Stamp Act, 7 U.S.C. § 2014(d)(3) (1982) (amended 1985). Accordingly, those persons, including plaintiffs Jordan and Quinn, who lost food stamp benefits because of the determination that any such institution was not an "institution of higher education," are entitled to a retroactive grant of lost food stamp benefits. *See* the Parties' "Additional Stipulations" No. 26.

6. Plaintiffs assert, in the alternative, that the amendments of the Food Security Act of 1985 were effective on 23 December 1985, the date of the statute's enactment, and that, therefore, the Secretary's use of the term "institution of higher education" for the exclusion provisions under 7 U.S.C. § 2014(d)(3) after that date was improper. Because the Court agrees with plaintiffs that the Secretary's 1981/82 educational income exclusion policy violated the Food Stamp Act and was arbitrary and capricious, the Court does not reach this question.

7. The parties have stipulated to the relief to which plaintiffs would be entitled should the Secretary's 1981/82 educational income exclusion policy be declared in violation of Section 5(d)(3) of the Food Stamp Act of 1977. *See infra* p. 1417.

stipulated that the action may be so maintained. *See generally* 2 H. Newberg, *Newberg on Class Actions* § 7.10 (2d ed. 1985) (Class actions are commonly certified on the basis of the defendant's stipulation or determination not to oppose class certification.).

The class represented by plaintiffs is defined as follows:

Those persons in the State of Virginia whose applications for food stamps were denied or whose food stamp benefits were reduced or terminated within two years prior to commencement of this action because that portion of an educational grant, deferred student loan, or other similar educational assistance, which was used by a member of the household beyond the age of compulsory school attendance to pay tuition or mandatory school fees at a post-secondary educational institution not requiring a high school diploma or equivalency certificate for enrollment, was included in household income under the food stamp program.

*See* Parties' "Stipulations" No. 11.

Although the precise number is not known, the parties have advised the Court that there are certainly more than one hundred (100) class members, notwithstanding the Secretary's recent determination that junior and community colleges in Virginia are "institutions of higher education." *See supra* note 5. Accordingly, the "numerosity" requirement of Rule 23(a)(1) is satisfied. *See, e.g., Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638, 645 (4th Cir.1975) ("Where the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, that they are not specifically identifiable supports rather than bars the bringing of a class action, because joinder is impracticable.")

Because the educational income exclusion policy at issue in this case has been applied to food stamp applicants and recipients throughout Virginia, there are clearly questions of law common to the class. Accordingly, the "commonality" requirement of Rule 23(a)(2) is satisfied. *See Cottrell v. Virginia Electric & Power Co.,* 62 F.R.D. 516, 519 (E.D.Va.1974).

The named plaintiff Joy Johnson is a member of the class she represents with the common issue (*i.e.*, the validity of the defendants' educational income exclusion policy) occupying essentially the same position in her claim as in the claims of the unnamed members. Accordingly, the "typicality" requirement of Rule 23(a)(3) is satisfied. *See, e.g., id.* at 521.

The interests of the named plaintiff are identical to those of the unnamed class members. Moreover, the named plaintiff's personal stake in the outcome of the case ensures zealous pursuit of the action such that the rights of the class are certain to be protected. Accordingly, the "representation" requirement of Rule 23(a)(4) is satisfied. *See, e.g., id.* at 521–22.

Finally, because the educational income exclusion policy at issue here has been applied to food stamp applicants and recipients throughout Virginia, final declaratory and injunctive relief with respect to the class as a whole is appropriate. Indeed, in governmental benefits litigation such as this case, the courts have repeatedly certified class actions under Rule 23(b)(2).

The Court, therefore, grants plaintiffs' motion for class certification. This suit will be maintained as a class action under Rule 23(b)(2), Federal Rules of Civil Procedure.

## DISCUSSION

■ The defendants maintain that the Secretary properly interpreted the intent of Congress and the terms of the Food Stamp Act of 1977. Congress did not define "institutions of higher education," while it did in fact define other terms in the Act. 7 U.S.C. § 2012. Therefore, the defendants argue, it would appear that Congress left to the Secretary the responsibility of defining "institutions of higher education," as it had under the 1964 Act. The Secretary's duty here, as always, is to define Congressional terms into meaningful and practical form. *Zuber v. Allen,* 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969). He argues that his definition is entitled to deference even if changed since the "initial agency interpretation is not instantly

carved in stone." *Hicks v. Cantrell,* 803 F.2d 789, 793 (4th Cir.1986), quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 863, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694 (1984).

Defendants' reliance on *Chevron U.S.A.* and its progeny, such as *Hicks v. Cantrell,* however, is misplaced. These cases stand for the proposition that an agency's revision of its definition of a statutory term is entitled to deference where (a) the intent of Congress cannot be ascertained from either the language of the statute or its legislative history and (b) the agency's revision is the result of detailed and informed rulemaking in a complex area in which the agency has special expertise. *See Chevron U.S.A.,* 467 U.S. at 843, 104 S.Ct. at 2781–82; *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). Neither is true of the Secretary's 1981/82 revision of its interpretation of the educational income exclusion set forth in Section 5(d)(3) of the Food Stamp Act.

### A. Congressional Intent

The defendants' 1981/82 educational income exclusion policy was contrary to clear Congressional intent as evidenced by: (1) the plain meaning of Section 5(d)(3) of the Food Stamp Act as originally enacted; (2) the Food Stamp Act's legislative history; (3) the Secretary's contemporaneous construction of the term "institution of higher education;" (4) Congress' prior express definition of the term "institution of higher education" in the Higher Education Act; and, (5) Congress' 1985 amendment "clarifying" its original intent in enacting Section 5(d)(3).

### 1. Plain Meaning

Defendants assert that the term "institution of higher education" plainly refers only to colleges and universities. Webster's Third New International Dictionary of the English Language, Unabridged (1981), however, defines "higher education" first as "education beyond the secondary level" and then as "education provided by a college or university." Nothing in these definitions suggests the requirement of a high school diploma for admission. Indeed,

the Secretary's recent concession that junior and community colleges in Virginia are "institutions of higher education" undermines his own position that the diploma requirement is the proper criteria for defining the term since a high school diploma or equivalency certificate is not mandatory for enrollment in these Virginia institutions. *See supra* note 5.

### 2. Legislative History of Section 5(d)(3)

That Congress used the words "institution of higher education" in Section 5(d)(3) of the Food Stamp Act of 1977 in this broader sense to include all post-secondary educational institutions is clear from the legislative history of Section 5(d)(3). *See* H.Rep. No. 464, 95th Cong., 1st Sess. 35, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1978, 2012 ("The term 'institution of higher education' refers ... to an 'institution providing post-high school education including, but not limited to, colleges, universities, and vocational and technical schools at the post-high school level.' It would also include schools for the physically handicapped or impaired and correspondence schools.").

### 3. Defendants' Contemporaneous Construction

■ The Secretary adopted the House Agriculture Committee's definition of "institution of higher education" in his regulations. *See* 7 C.F.R. § 271.2 (1981) (amended August 25, 1981). *See also* 43 Fed.Reg. 47,882 (1978). Clearly, the Secretary understood this Congressionally approved definition to include any post-secondary educational institution, regardless of whether such institution required a high school diploma or equivalency certificate for enrollment. This contemporaneous construction of Section 5(d)(3) by the agency charged with its implementation is entitled to great weight in ascertaining the intent of Congress. *See, e.g., Federal Trade Commission v. Mandel Brothers, Inc.,* 359 U.S. 385, 391, 79 S.Ct. 818, 823–24, 3 L.Ed.2d 893 (1959).

### 4. The Higher Education Act

A year before the Food Stamp Act was re-enacted in 1977, Congress expressly de-

fined the term "institution of higher education" when it passed the 1976 amendments to the Higher Education Act. Education Amendments of 1976, Pub.L. No. 94–482, § 181, 90 Stat. 2081, 2167, 20 U.S.C. § 1070 *et seq.* (1982). The Higher Education Act defines the term "institution of higher education" as follows:

> The term "institution of higher education" means an educational institution in any State which (1) admits as regular students only students having a certificate of graduation from a school providing secondary education, or the recognized equivalent of such certificate, *or who are beyond the age of compulsory school attendance* . . .

20 U.S.C. § 1085(b) (1982) (emphasis added). *See also* 20 U.S.C. § 1141(a) (1982); 34 C.F.R. § 668.2 *et seq.* (1986). Moreover, under federal law, the Pell Grants received by the named plaintiffs are available *only* to students attending "institutions of higher education." *See* 20 U.S.C. §§ 1070a and 1070a(a)(1)(A) (1982).

■ Ordinarily, two statutes with a common purpose and similar language should be interpreted *pari passu* because, absent a clear manifestation to the contrary, the legislature is presumed to intend the same result by using similar language in similar legislation. *See, e.g., Northcross v. Board of Education of Memphis City Schools,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973). While the Food Stamp Act and the Higher Education Act obviously do not concern *identical* subject matter, the Food Stamp Act and the student assistance provisions of the Higher Education Act were intended to benefit low-income families. *See* 7 U.S.C. § 2011 (1982); 20 U.S.C. § 1070 (1982). "Together, these programs 'express society's concern that the poor shall not go hungry or uneducated.' " *Malone v. Block,* Civil No. 83–34– D–2, slip op. at 8 (S.D.Iowa July 31, 1985) [Available on WESTLAW, DCT database] (quoting *Tufaro v. Dep't of Human Services,* 90 N.J. 538, 547, 449 A.2d 1, 6 (1982)).

When Congress re-enacted the Food Stamp Act one year after amending the Higher Education Act, Section 5(d)(3) was clearly intended to exclude tuition scholarships from household income. *See Shaffer v. Block,* 705 F.2d 805, 810 n. 6 (6th Cir. 1983). The section was designed to encourage the poor to go to school. The House Agriculture Committee explained the need for Section 5(d)(3) as follows:

> [Section 5(d)(3) ] is consistent with current food stamp practice in which a scholarship (or its equivalent) is counted as income, but a deduction is then given for the portion of the scholarship going for tuition and mandatory fees. In both cases, the idea is to count as income that portion of a scholarship that goes for living expenses, but not to count the portion that is clearly unavailable because it is used for tuition and fees. . . .

> This provision does not represent any program liberalization. It is necessary simply to maintain the current practice of not counting as income the part of scholarships going for tuition. If there were no such provision, tuition scholarships would be counted as income for the first time. Many poor students and their families would become ineligible for the program even though they have no more income than in the past. This would not affect any students other than those whom the Committee has already determined should be eligible.

> For example, if this income exclusion were not provided, all of a scholarship would be counted as income but none of the tuition would be substracted [*sic* ]. Thus, a student getting a $2,000 scholarship usable only for tuition—and without a penny of it available for living costs— would be considered as having received $2,000 in spendable income. If a poor student with dependents entered college with a $2,000 tuition scholarship, and if the scholarship were counted as income, this could eliminate his or her entire household from the food stamp program even though the household would be just as poor as it was before the student received the scholarship. Counting the scholarship as income would be inconsistant [*sic* ] with Committee action specifically allowing such household's eligibility.

The failure to provide this income exclusion would actually make a harsh new change in the program that would exact heavy penalties on otherwise eligible poor students and their families.

H.Rep. No. 464, 95th Cong., 1st Sess. 34–35, *reprinted in* 1977 U.S.Code Cong. & Ad.News 1978, 2011–12.

Had Congress not intended the words "institution of higher education" in Section 5(d)(3) of the Food Stamp Act to refer to the same institutions as the identical language in the Higher Education Act, tuition scholarships under the Higher Education Act would penalize otherwise eligible poor students and their families in precisely the manner Congress sought to avoid. While this "harsh new change" was rejected by Congress in 1977 when it followed the House Agriculture Committee's recommendation and enacted the income exclusion provision in Section 5(d)(3) of the Food Stamp Act, this is the precise change wrought by the defendants' 1981/82 educational income exclusion policy. Construing the term "institution of higher education" as used in the Food Stamp Act of 1977 to refer to the same institutions Congress contemplated when it previously used, and expressly defined, the same term in the Higher Education Act avoids this irrational result.

### 5. *Subsequent Clarifying Legislation*

[5] While the legislative history of subsequent acts must be used with caution and cannot be allowed to override the "unmistakable intent" of the enacting Congress, *Citizens State Bank of Marshfield v. Federal Deposit Insurance Corp.*, 751 F.2d 209, 217 (8th Cir.1984); *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596, 100 S.Ct. 800, 813–14, 63 L.Ed.2d 36 (1980), subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction. *See, e.g., Red Lion Broadcasting Co. v. Federal Communications Commission*, 395 U.S. 367, 380–81 n. 8, 89 S.Ct. 1794,

1801–02 n. 8, 23 L.Ed.2d 371 (1969). In considering the impact of the Deficit Reduction Act of 1984 on a case pending before the Court when that statute was enacted, the Supreme Court wrote:

This 1984 legislation, which, it is said, sought to *"[c]larif[y] current law,"* Senate Print, at 79, leaves no doubt as to the prospective interpretation of the statute, but it carries in addition considerable retrospective weight.... In conjunction with contemporaneous evidence and the 1982 House Report, it removes all doubt.

*Heckler v. Turner,* 470 U.S. 184, 211, 105 S.Ct. 1138, 1153, 84 L.Ed.2d 138 (1985) (citations and footnote omitted) (emphasis added). *See also United States v. Montgomery County,* 761 F.2d 998, 1003 and 1003 n. 16 (4th Cir.1985) (Statutes may be passed purely to make what was intended all along even more unmistakably clear. In this regard, it is pertinent that the statutory heading of the new act provided for "clarification" of the earlier law.). *Cf. Ruhe v. Bergland,* 683 F.2d 102, 104 (4th Cir.1982) ("While the Court has indicated that subsequent legislation by Congress which declares the intent of an earlier statute is entitled to weight in statutory construction, the appellant has offered only a subsequent Committee Report, necessarily of less import, and not a subsequent legislative act.")

The "subsequent legislation" here, of course, is the Food Security Act of 1985, which sought to "clarify" current law that even institutions that do not require a high school diploma for admission benefit from the income exclusion provision in Section 5(d)(3) of the Food Stamp Act. *See* the repeated use of the word "clarify" and similar phrases in the full context of the Reports of both the House Agriculture Committee and the Conference Committee, *supra* p. 1408. *See also* H.Rep. No. 271, Part I, 99th Cong., 1st Sess. 142–43, *reprinted in* 1985 U.S.Code Cong. & Ad. News 1103, 1246–47. While the defendants argue that the Food Security Act sought to change the *law,*[8] it seems clear that what

---

**8.** Interestingly, the Secretary has elsewhere successfully argued the opposite position, that is, that the 1985 amendments do not suggest a

change in the law but merely clarified existing law. *See Alvarez v. Block,* —— F.Supp. —— 82 Civ. 4998, slip op. at 10–11 (S.D.N.Y. May 6,

Congress intended to change was "current *regulatory* policy," *i.e.*, the misunderstanding of the agency, not *Congress'* original intent with respect to the exclusion of educational assistance funds used to pay tuition and mandatory fees.

Therefore, the Court agrees with plaintiffs that the plain meaning of the statute, its legislative history, the agency's contemporaneous construction, Congress' prior express definition of identical language in the Higher Education Act, and the subsequent clarifying legislation in the Food Security Act of 1985 all suggest that the defendants' 1981/82 educational income exclusion policy was inconsistent with Congressional intent to exclude from household income under the food stamp program that portion of educational assistance funds used to pay tuition and mandatory school fees at any post-secondary educational institution regardless of whether such institution requires a high school diploma or equivalency certificate for enrollment. The case also differs from *Chevron U.S.A.* and its progeny in that the Secretary's 1981/82 revision of the definition of the term "institution of higher education" was not the result of "detailed and informed rulemaking," but was arbitrary and capricious.

### B. *Detailed Rulemaking*

Although Congress amended Section 6(e) of the Food Stamp Act in 1980 and again in 1982, neither of these amendments made any change to Section 5(d)(3) of the Food Stamp Act or indicated any Congressional dissatisfaction with the defendants' original educational income exclusion policy. *See* Food Stamp Act Amendments of 1980, Pub.L. No. 96–249, § 139, 94 Stat. 357, 370; Food Stamp Act Amendments of 1982, Pub.L. No. 97–253, § 161, 96 Stat. 772, 778. *See generally* 7 U.S.C. § 2015(e) (1982).

In implementing the 1980 amendments to the Food Stamp Act, the Secretary decided to revise its regulatory definition of the term "institution of higher education." His stated purpose in doing so was to *limit* the effect of Congress' 1980 restrictions on student eligibility to "students who are at-tending colleges, universities and vocational/technical schools which normally require high school graduation or an equivalency certificate to enroll." *See* 46 Fed.Reg. 43,-021 (1981). The Secretary made no mention to the public or to the Congress of any revision in its policy concerning the exclusion from household income of that portion of educational assistance funds used by eligible students to pay tuition and mandatory school fees. In fact, there is no indication in the public record whatsoever that the Secretary considered, or was even aware of, the impact that the 1981 revision of his definition of "institution of higher education" would have on his educational income exclusion policy. *See* 46 Fed.Reg. 43,019–43,026 (1981). Rather, the impact on that policy was an inadvertent consequence of the re-definition.

As the Fourth Circuit has held, "We defer to agency expertise in interpreting the meaning of [a statutory term] *only* when the agency demonstrates in 'a concise general statement' that it considered the major policy issues and applied its expertise in resolving them." *HLI Lordship Industries, Inc. v. Committee for Purchase From the Blind and Other Severely Handicapped*, 791 F.2d 1136, 1140 (4th Cir. 1986) (emphasis added); *Dalton v. USDA Food and Nutrition Service*, 816 F.2d 971, 974 (4th Cir.1987). The Supreme Court articulated the standard for judicial review of an agency's recission of its prior regulations in *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). When an agency "entirely fail[s] to consider an important aspect of the problem," its ruling is "arbitrary and capricious" and, therefore, unlawful. *Id.* at 43, 103 S.Ct. at 2866. *See, e.g., International Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 812 (D.C.Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984).

The scope of review under the "arbitrary and capricious" standard is narrow

---

1986) ("The Court agrees with the Federal Defendant.... Both the House and the Senate made explicit findings that the new legislation merely clarifies 'food stamp policy on edu-cational grants' ... Congress could not have made clearer its intent to reemphasize existing law by the amendment.") (citations omitted).

and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." ... In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." ... Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, *entirely failed to consider an important aspect of the problem,* offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

*Motor Vehicle Manufacturers Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866–67 (citations omitted and emphasis added). *See also Bedford County Memorial Hospital v. Health and Human Services,* 769 F.2d 1017 (4th Cir.1985) (Regulation changing process by which hospitals are compensated for portion of their malpractice costs attributable to medicare patients held arbitrary and capricious where the Secretary failed to consider important aspects of the problem.)

Not only are the Secretary's stated reasons for revising the definition of "institution of higher education" (*i.e.,* to limit the effect of Congress' 1980 restrictions on student eligibility) inconsistent with the policy changes thereby wrought with respect to the educational income exclusion provision set forth in Section 5(d)(3) (*i.e.,* decreasing eligible students' benefits), the Secretary was apparently not even aware, and thus entirely failed to consider, that he was changing his educational income exclusion policy.

■ While the fact that certain individuals may be disadvantaged by an adminis-

trative interpretation is not sufficient grounds for declaring the policy invalid as long as it is reasonable and within the confines of the statute, *Knebel v. Hein,* 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977), the Secretary's high school diploma distinction was not reasonable. Nor was it consistent with the Food Stamp Act. That a high school diploma requirement for enrollment is an unnecessary and unreasonable addition to the definition of an "institution of higher education" has been virtually recognized by the Secretary by his admission that junior and community colleges in Virginia are higher education institutions despite their enrollment of students without high school diplomas. That the Secretary's 1981/82 educational income exclusion policy was inconsistent with the plain meaning of the statute and Congressional intent has been discussed *supra.*

■ The Secretary argues that because the 1980 amendments made changes to the student eligibility provision in Section 6(e), a provision that uses the term "institution of higher education," and because he had no reason to believe that the same term used in Section 5(d)(3) should have a separate definition, the new definition also applied to the exclusion provision in Section 5(d)(3). However, the defendants' "interrelationship" (between Sections 5(d)(3) and 6(e)) explanation for revision of the 1978 educational income exclusion policy appears nowhere in the administrative record concerning the 1980/81 rulemaking. Under well-established principles of administrative law, the Court may not accept counsel's *post hoc* rationalizations for agency action. Rather, the Court must determine the validity of agency rules solely on the basis articulated by the agency itself in the administrative record made in connection with the rulemaking. *See Motor Vehicle Manufacturers Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866–67.

Moreover, implementation of the 1980 amendments to Section 6(e) of the Food Stamp Act concerning student eligibility did not necessitate revision of the defendants' prior interpretation of the educational income exclusion set forth in Section

5(d)(3). Assuming that Congress intended to limit the effect of the 1980 amendments concerning student eligibility to students enrolled in institutions of higher education that normally require a high school diploma, this result could have easily been obtained by adding a proviso to the provision concerning eligibility, without changing the defendants' educational income exclusion policy.

The Secretary's choice was simply an unreasonable one given Congress' clear concern that the food stamp program benefit those truly needy students who use education as a means to escape poverty. "... If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it *unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.*" *Chevron U.S.A.*, 467 U.S. at 845, 104 S.Ct. at 2783 (citation omitted and emphasis added). Congress intended to exclude scholarships and Pell grants and the like from household income for food stamp purposes regardless of whether a student went to an institution that required a high school diploma or to one that did not. After all, it is usually the poorer students who attend beauty school or auto mechanics school or secretarial school; and these schools usually do not require a high school diploma or G.E.D. for enrollment. It is inconceivable that Congress would penalize these students because the institutions they chose do not require a high school diploma for admission. It is unreasonable to suggest that Congress would want to include in income scholarship moneys that these students received to attend such institutions and, consequently, reduce the food stamp benefits to which the students were otherwise entitled. Obviously, the Secretary "entirely failed to consider an important aspect of the problem" when he revised the definition of "institution of higher education" and applied the new definition to both Section 6(e) and Section 5(d)(3). *See Motor Vehicle Manufacturers Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866–67.

■ The Court is mindful of the great deference to which an agency interpretation is entitled. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Congress intended to "trust [the food stamp program's] management to the Department of Agriculture operating in good faith and under the guidance of [Congress'] legislative dictates," 123 Cong.Rec. H29568 (daily ed. Sept. 16, 1977) (statement of Rep. Foley), and delegated "broad regulatory authority" to the Secretary to promulgate all necessary and appropriate regulations to administer the food stamp program. *Missouri v. Block,* 690 F.2d 139, 142 (8th Cir.1982). However, the Court as well as the agency must give effect to the unambiguously expressed intent of Congress; when Congressional intent is clear, that is the end of the matter. *Chevron U.S.A.,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Furthermore, as the Fourth Circuit held in *Brown v. Porcher,* 660 F.2d 1001, 1004–05 (4th Cir.1981) (quoting *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 783, 101 S.Ct. 2142, 2148–49, 68 L.Ed.2d 612 (1981)), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983), "[T]he amount of deference due an administrative agency's interpretation of a statute ... 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements.'" And the fact that an agency's statutory interpretation has been neither consistent nor long-standing substantially diminishes the deference to which it is entitled. *Bowen v. American Hospital Ass'n,* 476 U.S. ——, 106 S.Ct. 2101, 2122 n. 34, 90 L.Ed.2d 584, 609 n. 34 (1986). Finally, the Court notes that the Food Stamp Act itself expressly limits the Secretary's rule making authority to regulations that are "consistent" with the Act. 7 U.S.C. § 2013(c) (1982).

■ Accordingly, in this case, the Court cannot defer to the defendants' policy. The defendants' 1981/82 policy was arbitrary and capricious in that, as the administrative record in connection with the 1980/81 rulemaking reveals, the Secretary entirely failed to consider the effect that

re-definition of the term "institution of higher education" would have on the educational income exclusion policy. Moreover, the defendants' revised 1981/82 educational income exclusion policy was contrary to clear Congressional intent. For these reasons, the Court finds that the defendants' 1981/82 educational income exclusion policy violated Section 5(d)(3) of the Food Stamp Act of 1977, 7 U.S.C. § 2014(d)(3) (1982) (amended 1985), and GRANTS the plaintiffs' motion for summary judgment.

### RELIEF

■ Pursuant to the Food Stamp Act, food stamp applicants and recipients are entitled to restoration of wrongfully withheld benefits. *See* 7 U.S.C. § 2023(b) (1982). *See also Biggs v. Lyng,* 644 F.Supp. 998, 1010 (E.D.N.Y.1986).

Accordingly, the parties stipulated that if plaintiffs prevailed with respect to their contention that the defendants' 1981/82 educational income exclusion policy violated Section 5(d)(3) of the Food Stamp Act of 1977, 7 U.S.C. § 2014(d)(3) (1982) (amended 1985), they would be entitled to:

(a) restoration of all food stamp benefits wrongfully withheld from class members (because of defendants' educational income exclusion policy) during the period from one year prior to the date of commencement of this action through August 1986, inclusive; and,

(b) restoration of all food stamp benefits wrongfully withheld from class members (because of defendants' educational income exclusion policy) who requested a local agency conference, fair hearing and/or restoration of such benefits during the period from one year prior to such request through August 1986, inclusive.

An appropriate order shall issue.