COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bray and Annunziata
Argued at Alexandria, Virginia


MAY DEPARTMENT STORES COMPANY

MEMORANDUM OPINION* BY
v.    Record No. 3356-01-2    JUDGE JERE M. H. WILLIS, JR.
AUGUST 6, 2002
COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF ENVIRONMENTAL QUALITY
 AND THOMAS L. HOPKINS (NOW
 ROBERT G. BURNLEY), DIRECTOR


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

John S. Hahn (Julie Anna Potts; William C.
Wood; Michael Ewing; Mayer, Brown, Rowe &
Maw; Rawlings & Wood, on briefs), for
appellant.

(Jerry W. Kilgore, Attorney General; Roger L.
Chaffe, Senior Assistant Attorney General;
John K. Byrum, Jr., Assistant Attorney
General, on brief), for appellee.


May Department Stores Company ("May") appeals the judgment of

the trial court affirming a Department of Environmental Quality

("DEQ") denial of reimbursement for soil removal undertaken as a

result of a petroleum release.  May contends that the trial court

erred in affirming the decision because (1) DEQ relied on post hoc

rationales on appeal, and (2) DEQ's decision was arbitrary and

capricious and not supported by substantial evidence.  For the

--------

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

following reasons, we reverse the judgment of the trial court and order the case remanded to DEQ for further consideration.

## I.   BACKGROUND

On March 30 and April 5, 1993, May reported to DEQ the discovery of petroleum releases at the Hecht's Distribution Center in Henrico County, where May's contractors were removing underground storage tanks.  Two tanks had been removed and were intact.  However, the surrounding soil was visibly contaminated, apparently from the release of fuel oil.

By letter dated April 2, 1993, DEQ directed May to submit an initial abatement measure report ("IAR") and a site characterization report ("SCR").  The letter explained that DEQ's review of the SCR would determine whether "further actions and/or a Corrective Action Plan" would be required.  On April 5, 1993, May's contractor sought guidance from DEQ as to the extent of the necessary cleanup.  Without receiving a directive or site visit by DEQ, May's contractor began removing visibly contaminated soil for offsite disposal.

On April 21, 1993, in a teleconference with May's consultant, DEQ directed May to remove visibly contaminated soil.  This directive was unqualified as to volume or scope, and made no reference to the water table.  May's IAR and SCR documented the removal of visibly contaminated soils. Photographs of the site excavation confirmed such.  In response to May's IAR and SCR, DEQ approved closure of the site, noting,

-

"this investigation is considered closed" and that "corrective action is not required." Thus, May's efforts satisfied all cleanup requirements and no Corrective Action Plan was required.

May applied for reimbursement from the Virginia Petroleum Storage Tank Fund ("Tank Fund") of approximately $600,000 in costs expended on the site cleanup. See Code § 62.1-44.34:11; 9 VAC 25-590-210. DEQ authorized reimbursement of $76,706.30 and denied reimbursement of $525,592.30. Its reasons for the denial included: (1) May's incorrect application of DEQ's "usual and customary rates"; (2) DEQ's need for additional documentation for certain costs; and (3) May's failure to justify the necessity of certain actions.

May sought reconsideration. It reduced its claim to comply with DEQ's uniform customary rates and sought reimbursement of $420,979.63 of the $525,592.30 denied in the initial decision. A reconsideration panel awarded May reimbursement of an additional $61,891.04. The panel based its denial of further reimbursement on May's failure to obtain written approval for soil removal before April 21, 1993, and on May's excavation below the water table, which DEQ asserted was at 5.5 feet below grade. The reconsideration panel gave May credit for considering as sufficient the oral authorization that it received in the April 21, 1993 teleconference, and it allowed May reimbursement, in part, for the cost of excavation pursuant to that oral authorization.

-

The reconsideration panel determined that May had excavated 3,374 tons of soil prior to the April 21, 1993 authorization. Holding that excavation to be unauthorized, it denied reimbursement for its cost. It found that pursuant to the April 21, 1993 authorization, May excavated an additional 1,675 tons of soil, but that this included excavating to a depth of 13.5 feet, whereas the water table was encountered at 5.5 feet below grade. It disallowed reimbursement for the cost of excavation below the water table. It found that May had excavated 683 tons of soil, pursuant to authorization, down to the 5.5 foot water table level. It allowed reimbursement for that amount of excavation.

The trial court affirmed DEQ's reconsideration panel decision.

## II. ANALYSIS

Separate standards of review determine the degree of deference, if any, to be given on appeal to an administrative agency's decision. Holtzman Oil Corp. v. Commonwealth, 32 Va. App. 532, 539, 529 S.E.2d 333, 337 (2000).

> Where the issue is whether there is substantial evidence to support findings of fact, great deference is to be accorded the agency decision. Where the issue falls outside the specialized competence of the agency, such as constitutional and statutory interpretation issues, little deference is required to be accorded the agency decision. Where, however, the issue concerns an agency decision based on the proper application of its expert discretion, the reviewing court

-

> will not substitute its own independent
> judgment for that of the agency but rather
> will reverse the agency decision only if
> that decision was arbitrary and capricious.
> Finally, in reviewing an agency decision,
> the courts are required to consider the
> experience and specialized competence of the
> agency and the purposes of the basic law
> under which the agency acted.

Id. (quoting Johnston-Willis Ltd. v. Kenley, 6 Va. App. 231,
246, 369 S.E.2d 1, 9 (1988)).  Agency decisions must be in
writing and become part of the record.  See Code §§ 2.2-4020
and -4023.

> When the decision on review is to be made on
> the agency record, the duty of the court
> with respect to issues of fact shall be
> limited to ascertaining whether there was
> substantial evidence in the agency record
> upon which the agency . . . could reasonably
> find them to be as it did.

Code § 2.2-4027.

### A.  POST HOC RATIONALE

May first argues that the trial court erroneously
considered, as grounds for affirmance, reasons not underlying
DEQ's decision.  "Under well-established principles of
administrative law, the Court may not accept counsel's post hoc
rationalizations for agency action.  Rather, the Court must
determine the validity of agency rules solely on the basis
articulated by the agency itself in the administrative record
made in connection with the rulemaking."  Jordan v. Lyng, 659
F. Supp. 1403, 1416 (E.D. Va. 1987).

The DEQ reconsideration panel based its denials of reimbursement on two holdings:  First, that its regulation VR 680-13-02 authorized soil removal only upon written pre-approval by DEQ and non-compliant soil removal was not reimbursable; and second, that excavation below the ground water table was not standard practice and was not reimbursable.

DEQ argued before the trial court that May's excavation prior to April 21, 1993, was neither an "initial response," VR 680-13-02 § 6.2,[1] nor an "initial abatement," VR 680-13-02 § 6.3.[2]  It argued that the excavation for which reimbursement was sought was a "corrective action plan," VR 680-13-02 § 6.6,[3] which required prior written authorization by DEQ.  It argued further that excavation below the ground water table contravened standard industry practice and prudent cleanup management and thus was ineligible for reimbursement.

We hold that the position taken by DEQ before the trial court was in support of its reconsideration panel's determination and lay along the same lines.  Thus, that position was not a post hoc rationale.

----

[1] Recodified as 9 VAC 25-580-240.

[2] Recodified as VAC 25-580-250.

[3] Recodified as VAC 25-580-280.

-

B.   MERITS OF THE DEQ DETERMINATION

1.   REQUIREMENT OF WRITTEN AUTHORIZATION

The Tank Fund, Code § 62.1-44.34:11, provides reimbursement for "reasonable and necessary costs incurred by 'owners and operators' of underground petroleum storage tanks 'in taking corrective action for any release of petroleum into the environment . . . .'"  Holtzman, 32 Va. App. at 540, 529 S.E.2d at 337 (quoting Code § 62.1-44.34:11(A)(2)(a)).  The Tank Fund provides reimbursement for three types of corrective action: (1) initial response pursuant to VR 680-13-02 § 6.2, (2) initial abatement pursuant to VR 680-13-02 § 6.3, and (3) activity pursuant to an approved corrective action plan pursuant to VR 680-13-02 § 6.6.  Id. at 541, 529 S.E.2d at 338.

VR 680-13-02 § 6.2 "initial response" requires an owner or operator, upon discovering a petroleum release, (1) to report the release, (2) to take immediate action to prevent further release into the environment, and (3) to identify and mitigate fire, explosion and vapor hazards.  "The DEQ has interpreted VR 680-13-02 § 6.2 to include those activities involving 'hazards' to 'human health, safety, and the environment,' which 'must be initiated immediately.'"  Holtzman, 32 Va. App. at 541, 529 S.E.2d at 338.

May reported discovering the release.  No other circumstances contemplated by VR 680-13-02 § 6.2 obtained, and

-

May performed no activity pursuant to VR 680-13.02 § 6.2 for which it sought reimbursement.

On June 8, 1993, May submitted to DEQ a report, which stated:

> No vapors or free product were observed in the site storm sewers or basements of the site buildings. Sanitary sewers were not observed in the vicinity of the UST [underground storage tank] areas. Ambient air was monitored in the UST removal work areas using an HNu PID [photo-ionization detector]. There was no instrument response during ambient air monitoring.

This site characterization report stated that the petroleum remaining in the soils was "immobile and not volatile." With no fire, explosion, or vapor hazard present, May's actions were not performed as an initial response activity pursuant to VR 680-13-02 § 6.2. See Holtzman, 32 Va. App. at 542, 529 S.E.2d at 338.

A corrective action plan developed under VR 680-13-02 § 6.6 is a detailed strategy for responding to contaminated soil and ground water. It is designed to provide direction, with agency specifications, in the cleanup process and to ensure the protection of human health, safety, and the environment. A corrective action plan must be approved by DEQ. See VR 680-13-02 § 6.6. May submitted no corrective action report, and DEQ approved no corrective action plan. Thus, May's activities were not pursuant to VR 680-13-02 § 6.6 and do not qualify for reimbursement under that section.

-

Because May's actions fell within the ambit of neither Section 6.2 nor Section 6.6, the issue is whether its actions constituted initial abatement pursuant to Section 6.3.

Under Section 6.3, owners and operators, <u>unless otherwise directed</u>, must, among other things:

> (1) remove as much of the regulated substance from the [excavated] system as is necessary to prevent further release to the environment;
>
> (2) visually inspect any above ground releases or exposed below ground releases and prevent further migration of the released substance into surrounding soils and ground water;
>
> (3) [not applicable;]
>
> (4) remedy hazards posed by contaminated soils that are excavated or exposed as a result of release confirmation, site investigation, abatement, or corrective action activities;
>
> (5) [not applicable;]
>
> (6) investigate to determine the possible presence of free product, and begin free product removal as soon as practicable and in accordance with 9 VAC 25-580-270 [relating to the matter of handling and disposing of free petroleum product].

VR 680-13-02 § 6.3 (emphasis added).  The measures required of owners and operators under VR 680-13-02 § 6.3 are not conditioned upon prior written authorization and must be accomplished absent contrary direction by DEQ.

The excavations performed by May fell within its obligations under VR 680-13-02 § 6.3.  May promptly reported its

-

discovery of the petroleum leakage and undertook diligently and efficiently to perform and satisfy its obligations under the regulation. It removed the escaped regulated substance and contaminated soil and water. It forestalled further migration of the regulated substance. DEQ never directed it to do otherwise. Indeed, on April 21, 1993, DEQ directed May to continue the operation in progress. DEQ misconstrued its regulation when it held that VR 680-13-02 § 6.3 required prior written authorization for May's activity. Furthermore, it makes no sense to approve and permit reimbursement for excavation subsequent to the April 21, 1993 telephone conference while denying reimbursement for identical and equally necessary excavation prior to that date. Thus, we hold that DEQ committed an error of law in misconstruing its regulation and that the trial court erred in affirming that error.

## 2.  EXCAVATION BELOW THE WATER TABLE

DEQ justified its denial of reimbursement upon a finding that May had excavated below the water table level, which it stated was located at 5.5 feet below grade. No evidence supports this finding. DEQ attributed its ascertainment of the water table depth to May's site characterization report. However, that report did not identify the water table level. Rather, it referred to "[a]n apparent perched ground water at the site occurs at a depth between approximately 5.5 and 9.0 feet as measured in ground water monitoring wells . . . ."

-

Perched water is a containment or pooling of water not connected to the water table. Thus, DEQ's determination that May excavated below the water table level is unsupported by evidence, and the trial court erred in affirming that finding.

We reverse the judgment of the trial court and direct that the case be remanded to DEQ for determination whether May's excavation and cleanup efforts accorded with the requirements of VR 680-13-02 § 6.3 and whether May is entitled to reimbursement for its attendant expenses.

<u>Reversed and remanded.</u>

-